Enrique R. SUAREZ, Plaintiff,

v.

CHARLOTTE–MECKLENBURG SCHOOLS, Defendant.

No. 3:00CV68–H.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 4, 2000.

Enrique R. Suarez, Salisbury, NC, pro se.

Barbara H. Wright, Charlotte, NC, for Charlotte–Mecklenburg Schools.

## MEMORANDUM OPINION AND ORDER

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss" (document # 2) and "Memorandum In Support of Motion to Dismiss" (document # 3), both filed February 22, 2000. Plaintiff's "Memorandum of Response to Motion to Dismiss" (document # 6) was filed on March 10, 2000. The Defendant's time to file a reply has expired.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for the Court's determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will respectfully

*grant* Defendant's motion and *dismiss* the Complaint.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The undisputed facts relative to Plaintiff's claims are few: Plaintiff Enrique R. Suarez ("Mr. Suarez"), a native of Peru, was hired by Defendant Charlotte–Mecklenburg Board of Education ("CMBE") on August 8, 1998. Mr. Suarez remained employed as a Spanish teacher at Crestdale Middle School until his resignation on February 19, 2000.

The *pro se* Complaint makes sweeping and conclusory allegations, but provides little or no factual detail. For example, "[t]he plaintiff charges against the defendant not only racial discrimination in the job, but sexual harassment, defamation of character and demeanor, retaliation on the job and outside the job, and malicious intent to blackmail the plaintiff and to take away the plaintiff [sic] income." To the extent there are any facts alleged at all, we learn in disjointed and rambling fashion that the Plaintiff first sought a teaching position with the Defendant sometime in 1996; that the Defendant never "interviewed [the Plaintiff] for the positions that [his] expertise and interests warranted"; that the Plaintiff "begun experienced [sic] sexual harassment from his immediate supervisor [at Crestdale] DeWayne Cash"; that "[the Plaintiff] complain [sic] with school principal Mr. Edward Ellis who immediately transferred the plaintiff to another supervisor named Mrs. Watson"; and that "Mr. Cash continued to harass the plaintiff as a retaliation ... [and] influenced Mrs. Watson negatively which resulted in a bellow [sic] standard mid-year evaluation." The Plaintiff characterizes this evaluation as containing "derogatory and untrue statements about the plaintiff [sic] capabilities, professional experience, and demeanor."

Presumably to highlight his "damages," the Plaintiff also alleges that he "began to suffer stress disorders and due to his doctor's recommendation, on February 18 of 1999 ... was forced to resign from his job due to the intolerable working conditions ..."; that prior to his resignation, the Defendant had promised but not actually offered him other positions; that the Defendant put him in the "wrong teacher salary scale," crediting him with only two years previous experience, when he actually had "15 years of professional experience"; and improperly took away his sick leave days.

Finally, the Plaintiff accuses the Defendant of retaliating against him for making a charge with the Equal Employment Opportunity Commission ("EEOC") *after* he had resigned. Specifically, the Plaintiff alleges that the Defendant gave false information to the Employment Security Commission ("ESC") regarding his application for unemployment insurance, as well as to Plaintiff's prospective employers.

On February 23, 1999, four days after resigning, the Plaintiff filed an administrative charge of discrimination with the EEOC, checking boxes indicating that "national origin" and "retaliation" were the basis for his charge. On December 16, 1999, after the EEOC issued a "right to sue" letter, the Plaintiff filed the subject complaint in the Superior Court of Mecklenburg County, North Carolina.

The Defendant removed the state action based on federal question jurisdiction. Removal appears to have been proper and, in any event, has not been challenged by the Plaintiff.

On February 22, 2000, Defendant moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The motion has been briefed, as set forth above, and is now ripe for disposition.

## II. *DISCUSSION OF CLAIMS*

### A. *Standard of Review*

"A motion to dismiss under [Fed. R.Civ.P. 12(b)(6) ] tests the sufficiency of a complaint; importantly, it does not resolve

contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992), *citing* 5A C. Wright & A. Miller, *Fed. Practice and Procedure* § 1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir.1996) (*en banc* ), *citing Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989); *and Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969). *Accord Republican Party of NC,* 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff, assuming its factual allegations to be true. *See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *Martin Marietta v. Int'l Tel. Satellite,* 991 F.2d 94, 97 (4th Cir.1992); *and Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989). This is particularly true of a motion to dismiss a complaint filed by a *pro se* plaintiff. *Haines,* 404 U.S. at 520, 92 S.Ct. 594 (instructing court to "[c]onstru[e] [a *pro se* ] petitioner's inartful pleading liberally"); *Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551, (1982).

In applying *Haines,* the Fourth Circuit Court of Appeals has stated:

[The Court] takes the position that its district courts must be especially solicitous of civil rights plaintiffs. This solicitude for a civil rights plaintiff with coun-

sel must be heightened when a civil rights plaintiff appears *pro se.* In the great run of *pro se* cases, *the issues are faintly articulated and often only dimly perceived.* There is, therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done. So, although the Court of Appeals cannot mean that it expects the district courts to assume the role of advocate for the *pro se* plaintiff . . . . strongly suggest that the district court must examine the *pro se* complaint to see whether the *facts alleged, or the set of facts which the plaintiff might be able to prove,* could very well provide a basis for recovery under any of the civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations. Accordingly, the Court in considering the defendants' motion to dismiss will not permit technical pleading requirements to defeat the vindication of any constitutional rights which the plaintiff alleges, however inartfully, to have been infringed.

*Gordon v. Leeke,* 574 F.2d 1147 (4th Cir. 1978) (emphasis added) (internal citation omitted). *Accord Beaudett v. City of Hampton* 775 F.2d 1274, 1277–78 (4th Cir. 1985) ("*Pro se* lawsuits present district judges and magistrates with a special dilemma . . . they represent the work of an untutored hand requiring special judicial solicitude.") (internal citation omitted); *and Peck v. Merletti,* 64 F.Supp.2d 599, 601 (E.D.Va.1999).

On the other hand, Title VII actions do not have special status under the rules of civil procedure with respect to pleading requirements, *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 150, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984), and "vague and conclusory" allegations are insufficient to satisfy the notice pleading requirements of the Federal Rules of Civil Procedure. *See, e.g., United Housing Foundation, Inc. v. Forman,* 421 U.S. 837,

860, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 234 (4th Cir.1999); *and Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir.1990) (Motion to Dismiss for failure to state claim granted where Complaint alleged only that Plaintiff was "required to work in places and under conditions where prejudice and bias exist," was "denied opportunities to be promoted," and was "treated poorly on the job and harassed," but lacked factual specifics).

Applying these principles, Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief may be granted.

### B. *Exhaustion of Administrative Remedies*

It is well-settled under Title VII that a plaintiff is required to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory activity and prior to filing an action in federal court. *See* 42 U.S.C. § 2000e–5(e); *and NAACP Labor Committee of Front Royal v. Laborers' International Union of North America*, 902 F.Supp. 688, 699 (W.D.Va. 1993). "The timely filing requirement serves two primary purposes: to give notice to the charged party and to give the EEOC an opportunity to settle the grievance." *NAACP Labor Committee of Front Royal*, 902 F.Supp. at 699, *citing Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 876–77 (11th Cir.1986).

Technically speaking, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Nonetheless, a failure to file a timely EEOC charge may result in dismissal. "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). *Accord Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995); *and EEOC v. General Electric Co.*, 532 F.2d 359, 366 (4th Cir.1976) ("Where ... claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred").

Although the Plaintiff mentioned sexual harassment in Paragraph I of his EEOC charge, the Defendant argues that he failed to exhaust administrative remedies for claims other than discrimination on the basis of "national origin" and "retaliation," the only two boxes marked on the EEOC form. *But see Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (In determining which claims had been exhausted, court considered not only original charging document, but also a letter filed two months later); *and Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir.1996) ("discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit"). Thus, if the Complaint were otherwise well pled, the salient issue would be whether allegations in the Complaint are "reasonably related" to the allegations contained in the EEOC charge or would have been "developed by reasonable investigation." *Evans*, 80 F.3d at 962–63.

However, in this case, the Court need not decide whether the Plaintiff failed to exhaust his administrative remedies as to a particular Title VII claim because, even duly considering Plaintiff's *pro se* status, he has clearly failed to plead *any* Title VII claim.

### C. *Discrimination Based on Sex/Sexual Harassment*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, makes it an

unlawful employment practice for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1) (1999). This statute on its face prohibits discharge or differential treatment of employees on the basis of their sex; however, because the workplace environment is one of the "terms, conditions, or privileges of employment," Title VII also protects employees from being forced to work in a "hostile work environment." *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ("a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment").

■ To establish a hostile work environment claim under Title VII, a plaintiff must prove the following elements:

> (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer.

*Spicer v. Commonwealth of Virginia, Dep't of Corrections*, 66 F.3d 705, 709–10 (4th Cir.1995) (en banc), *citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *and Swentek v. USAIR, Inc.*, 830 F.2d 552, 557 (4th Cir.1987).

■ Although the Supreme Court held in *Oncale v. Sundowner Offshore Services*, 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998), that "sex discrimination consisting of same-sex sexual harassment is actionable under Title VII," as Justice Scalia instructed for a unanimous Court:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat[ion] . . . because of . . . sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."
> . . . *Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of . . . sex."*

*Id.* at 1002 (emphasis added), *quoting Harris*, 510 U.S. at 25, 114 S.Ct. 367.

Simply put, the brief, conclusory allegations in this Complaint do not come remotely close to stating a claim of same-sex sexual harassment. Absent are factual specifics, or even bare allegations from which one might reasonably conclude (1) that there was harassment "based on the [Plaintiff's sex]"; (2) that any conduct which might otherwise qualify as sexual harassment was "sufficiently severe or pervasive to alter the Plaintiff's conditions of employment and to create an abusive work environment"; *or* (3) that there is a factual basis for imputing the unwelcome conduct to the employer. *Spicer*, 66 F.3d at 709–10.

### D. *Discrimination Based on National Origin*

To establish a disparate treatment claim, the Plaintiff may offer either direct or circumstantial evidence of discriminatory motive on the part of the employer. In this case, the Plaintiff has pled almost no facts and has certainly failed to point to

any direct evidence of discrimination based on direct evidence. Therefore, despite Plaintiff's sparse pleading, the Complaint will be evaluated in light of the standard for establishing a Title VII violation by circumstantial evidence.

The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), established an allocation of the burden of production and an order for the presentation of proof in Title VII disparate treatment cases based on circumstantial evidence. The plaintiff in such a case must first establish a *prima facie* case of discrimination based on national origin, specifically by showing:

(1) that [he] is a member of a protected class; (2) that [he] was qualified for his job and [his] job performance was satisfactory, (3) that, in spite of [his] qualifications and performance, [he] was fired; and (4) that the position remained open to similarly qualified applicants after [his] dismissal.

*Karpel v. Inova Health System Services*, 134 F.3d 1222, 1228 (4th Cir.1998), *citing McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *and Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir.1989). Although the *McDonnell Douglas* test was initially formulated in the context of a wrongful termination claim, the same framework has also been employed in the context of other types of disparate treatment cases. *See, e.g., Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir. 1985) (*prima facie* case of unequal disciplinary treatment requires showing "(1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person").

Under *McDonnell Douglas* and *Burdine*, *only* if the plaintiff establishes a *prima facie* case of discriminatory treatment, does a presumption of discrimination arise and the burden of production shift to the employer to articulate a "legitimate, nondiscriminatory" reason for the challenged employment action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

In this case, the Plaintiff has also failed to establish a *prima facie* case of discrimination based on national origin. Although the Complaint mentions in passing that the Plaintiff is from Peru and that he believes the Defendant discriminated against him on that basis, there are virtually no other factual or even conclusory allegations in support of this claim. Specifically, the Plaintiff nowhere alleges facts that would tend to show: (1) that his job performance was satisfactory; (2) that he was fired; (3) that his termination was in any way related to his national origin—which was clearly his national origin when hired as a Spanish teacher two years earlier; or (4) that the position "remained open to similarly qualified applicants after [his] dismissal." *Karpel*, 134 F.3d at 1228.

### E. *Retaliation*

 In addition to prohibiting harassment or discrimination in the workplace on the basis of sex, race, national origin, religion, or gender, Title VII of the Civil Rights Act of 1964 prohibits employers from retaliating against employees who enforce their rights under the Act. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation in violation of Title VII, an employee must show that: 1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action. *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991), *citing Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated in part on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *See also Hopkins v. Baltimore Gas and Electric Company*, 77 F.3d 745, 754 (4th Cir.1996); *Williams v. Cerberon-*

*ics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989); *and Bradley v. CMI Industries,* 17 F.Supp.2d 491, 495 (W.D.N.C.1998).

Only if the Plaintiff makes the required *prima facie* showing, does the burden shift to the employer to produce a "legitimate nondiscriminatory reason for the adverse action, thereby rebutting the presumption of retaliation raised by the prima facie case." *Ross,* 759 F.2d at 365. Thereafter, if the employer satisfies this burden of production, "the employee bears the ultimate burden of proving retaliation by demonstrating that the employer's proffered reason is pretextual" and that the real motive for the employment action was retaliation. *Id., citing St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The pertinent language of Title VII characterizes two broad categories of activities as "protected" for the purposes of a retaliation claim: an employer may not retaliate against an employee for 1) participating in an ongoing investigation or proceeding under Title VII, or 2) opposing discriminatory practices in the workplace. 42 U.S.C.A. § 2000e–3(a); *Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253, 258–59 (4th Cir. 1998). The statute specifically defines "participation" as (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. *Id., accord Laughlin,* 149 F.3d at 259.

■ In this case, the Plaintiff alleges that he filed his EEOC charge *after* resigning. Therefore, Plaintiff must either show some other action by him during his employment that was "oppositional" or "an adverse employment action" after he was no longer employed. *Id.* "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id., citing Armstrong v. Index Journal Co.,* 647 F.2d

441, 448 (4th Cir.1981). However, as one district court noted:

> Informal activities outside Title VII's established procedure are not necessarily entitled to federal protection. "[W]here accusations are made outside the procedures set forth by Congress that accusation is made at the accuser's peril." *E.E.O.C. v. C & D Sportswear Corp.,* 398 F.Supp. 300, 306 (M.D.Ga.1975). While employees should be encouraged to work out problems without resorting to federal process, careless and uncounselled accusations of discrimination are not necessarily protected by Title VII's opposition clause. Congress established Title VII procedures for a reason, and complaints made outside that system necessarily carry some additional risk.

*Bray v. Tenax,* 905 F.Supp. 324, 328 (E.D.N.C.1995).

The court must employ a balancing test to determine whether opposition activity is protected under Title VII. *Armstrong,* 647 F.2d at 448. Specifically, the Court must weigh "the purpose of the Act to protect persons engaging in reasonable activities opposing discrimination, against Congress' desire not to prevent employers from legitimately disciplining their employees." *Laughlin,* 149 F.3d at 257, *citing Armstrong,* 647 F.2d at 448. Activities such as "complaining to the employer" and "participating in an employer's informal grievance procedures," when done in a manner that is "not disruptive or disorderly," have thus been held to be opposition activities protected under Title VII. *Hopkins,* 77 F.3d at 754; *Armstrong,* 647 F.2d at 448.

Applying these principles and assuming the Plaintiff's scant factual allegations to be true, the Court will assume arguendo that Plaintiff's complaint to the principal constituted "oppositional activity." Nevertheless, Plaintiff clearly has not established the required causal nexus to any adverse employment action to establish a *prima facie* case of retaliation.

■ Plaintiff alleges two instances of retaliation. First, he alleges that his for-

mer supervisor, Mr. Cash, continued to harass him in retaliation for his complaint to the principal "[and] influenced Mrs. Watson (Plaintiff's new supervisor) negatively which resulted in a bellow [sic] standard mid-year evaluation." containing "derogatory and untrue statements about the plaintiff [sic] capabilities, professional experience, and demeanor." But as stated above, Plaintiff makes no allegation as to what Mr. Cash's behavior was, how he influenced Mrs. Watson's evaluation, what the untrue statements in the evaluation were, or how those statements in any way are or resulted in adverse employment action against the Plaintiff. Plaintiff identifies no demotion, change in pay or benefits, or even a disciplinary action that resulted from that evaluation. Although the Complaint does allege that Plaintiff was not in the correct salary scale, the Complaint is clear in that instance that the discrepancy, if any, resulted from a disagreement in calculating the Plaintiff's years of previous teaching and/or "professional" experience.

■ Nor can Plaintiff establish that he was constructively discharged. As noted, his conclusory allegations charge only that working conditions were "intolerable." However, actionable constructive discharge occurs only when an employer creates intolerable working conditions in a deliberate effort to force the employee to resign. *See Johnson v. Shalala,* 991 F.2d 126, 131 (4th Cir.1993). Thus, the doctrine of constructive discharge protects an employee "from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985). The employee "is not, however, guaranteed a working environment free of stress." *Id.* Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are *not* so intolerable as to compel a reasonable person to resign, and therefore do not constitute "constructive discharge." *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir.1994).

■ The Plaintiff also alleges that the Defendant "retaliated" by giving "false" information to the Employment Security Commission regarding his application for unemployment insurance, as well as to Plaintiff's prospective employers. As noted above, however, even if true, these events clearly occurred *after* his resignation. The Plaintiff has cited no authority, and the undersigned is aware of none, which could make the complained of conduct actionable "retaliation" under Title VII.

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter...." 42 U.S.C. § 2000e–3(a) (1999). Given the textual distinction between employees and applicants for employment, Congress could have added former employees if it had intended to do so. In addition, the term "employee" is defined in a manner which appears to exclude former employees. *See* 42 U.S.C. § 2000e(f) (1999) ("The term 'employee' means an individual employed by an employer....").

### F. *State Law Claims*

Although the Court would not choose to exercise supplemental jurisdiction over the state claims in the absence of any well pled Federal claim, the Plaintiff has also failed to plead a state claim on which relief could possibly be granted. This is true for at least two fundamental reasons.

■ First, the Court notes that the Plaintiff has not properly pled the Defendant's waiver of governmental immunity through the purchase of liability insurance. *See Presnell v. Pell,* 298 N.C. 715, 720, 260 S.E.2d 611, 614 (1979) ("Unless and until a school administrative unit has waived its immunity by procuring liability insurance, it may not be held responsible under respondeat superior for the intentional torts of its employees"). For this reason alone, the Complaint clearly fails to state a claim

on which relief could be granted. *Fields v. Durham City Bd. of Education,* 251 N.C. 699, 700, 111 S.E.2d 910, 911 (1960); *Gunter v. Anders,* 115 N.C.App. 331, 334, 444 S.E.2d 685, 687 (1994) (dismissing claims under Rule 12(b)(6) where plaintiff did not allege waiver of sovereign immunity by purchase of insurance). *Accord Hallman v. Charlotte–Mecklenburg Bd. of Educ.,* 124 N.C.App. 435, 438, 477 S.E.2d 179, 181 (1996) (strictly construing waiver requirement, Defendant Board of Education did not waive immunity by participating in city risk management agreement).

Further, to the extent that Plaintiff may be alleging negligence arising out of his performance evaluation, the Defendant has immunity from liability for negligence relating to conducting evaluations of teachers. *See* N.C.Gen.Stat. § 115C–333(e) (1999).

■■■ More importantly, however, the Plaintiff has also fallen woefully short of stating a state defamation claim. The elements of defamation are well known: there must be (1) a publication[1] that is both (2) defamatory[2] and (3) false. *Long v. Vertical Technologies, Inc.,* 113 N.C.App. 598, 601, 439 S.E.2d 797, 800 (1994). In this case, the conclusory allegations in Plaintiff's bare bones Complaint do not state the content of the allegedly false statement, how or when it was published, or the manner in which it defamed the Plaintiff. Accordingly, like the balance of Plaintiff's cursory and conclusory ramblings, his scant allegations are also insufficient to state a state defamation claim on which relief could possibly be granted.

[1] Under North Carolina law, there are two separate torts encompassed by the term "defamation," namely "libel" and "slander." Generally, libel is written while slander is oral. *But cf. Phillips v. Winston–Salem Forsyth County Bd. of Educ.,* 117 N.C.App. 274, 277, 450 S.E.2d 753, 756 (1994), *disc. rev. den.,* 340 N.C. 115, 456 S.E.2d 318 (1995). "[W]hen defamatory words are spoken with the intent that the words be reduced to writing (or with television, broadcast), and the words are in fact written (broadcast), the publication is both slander and libel." *Id.* at 278, 450 S.E.2d at 756, *quoting Clark v. Brown,* 99 N.C.App. 255, 261, 393 S.E.2d 134, 137, *disc.*

## III. *ORDER*

NOW THEREFORE, IT IS ORDERED:

1. The Defendant's "Motion to Dismiss" (document # 2) is **GRANTED,** and the Complaint is **DISMISSED WITH PREJUDICE.**

2. The Clerk is directed to send copies of this Memorandum Opinion and Order to the Plaintiff and to counsel for the Defendant.

*rev. den.,* 327 N.C. 426, 395 S.E.2d 675 (1990).

[2] In North Carolina, a publication is defamatory, when considered alone without explanatory circumstances, it: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace. *Aycock v. Padgett,* 134 N.C.App. 164, 166, 516 S.E.2d 907, 909 (1999).