Cheryl A. JOLLIFFE, Plaintiff,

v.

Roger W. MITCHELL, Sr., Sheriff, of
Culpeper County, Defendant.

Civil Action No. 96–00117–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

July 29, 1997.

Christopher R. Rau, Arlington, VA, for Cheryl A. Jolliffe.

Rosalie V. Pemberton, Joseph Ross Newell, III, Timberlake, Smith, Thomas & Moses, P.C., Staunton, VA, for Roger W. Mitchell, Sr.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This court has undertaken *de novo* review of the entire record. Having undertaken such review, this court will deny in part defendant's objections and plaintiff's objections, both of July 2, 1997, to the Magistrate Judge's Report and Recommendations of June 24, 1997. The court denies defendant's May 15, 1997 "Motion to Dismiss Plaintiff's Second Amended Complaint" as to the Family Medical Leave Act (FMLA) count and grants it as to the Section 1983 count.

### I. Background

Cheryl A. Jolliffe was employed as a Deputy Sheriff with the Culpeper County Sheriff between May 1985 and February 1996. Roger W. Mitchell was elected to the office of Sheriff of Culpeper County, to replace Robert E. Peters on January 1, 1996. On December 22, 1995 Sheriff Mitchell informed Ms. Jolliffe of his decision to reappoint her to the same position. During Sheriff Peters' tenure, Ms. Jolliffe allegedly had attendance problems. Although said problems were not documented until January of 1996, her work documentation reveals that she had a sick leave deficit of more than 24 days (Sheriff

Peters donated all leave to her before stepping down so that she might begin the new administration with a clear slate). On January 2, 1996 Ms. Jolliffe was involved in a car accident in which she was charged. After this accident, Ms. Jolliffe states that she was unable to return to her duties. On January 11, 1996 the defendant informed the plaintiff that she had no sick or annual leave left on her account and required her to provide verification of her illness. Plaintiff states that she provided such verification. Nonetheless, on February 7, 1996, defendant notified plaintiff by letter that her employment with the Culpeper County Sheriff was terminated effective on that date.

Plaintiff alleges that the Sheriff individually and in his capacity as Sheriff, and/or the County of Culpeper violated her rights under the Family and Medical Leave Act of 1993 (FMLA) by improperly calculating her available leave and by failing to inform her of her FMLA rights. She also asserts that the Sheriff violated her rights under Section 1983 by intentionally seeking to deprive her of her FMLA rights. As relied plaintiff requests monetary compensation for back wages and interest, reinstatement, an injunction against the Sheriff depriving her of her FMLA rights, and attorneys' fees. The defendant filed a motion to dismiss arguing that the defendant is not the successor in interest to Sheriff Peters, that Sheriff Mitchell is not liable for the actions or omissions of the County of Culpeper, that plaintiff has no right to protect under section 1983, and that any monetary damages are barred by the Eleventh Amendment of the Constitution. Magistrate Judge Crigler found that Sheriff Mitchell is the successor in interest to Sheriff Peters and recommended denying the motion to dismiss on this claim. Magistrate Judge Crigler also found that FMLA provided the entire scheme of relief intended in this area and that, therefore, section 1983 was inapplicable to this cause of action. Both plaintiff and defendant have objected to the Report and Recommendation. While the court adopts the ultimate recommendations of the Magistrate Judge, it lays out a brief explanation of the law governing the plaintiff's claims so as to support the Magistrate Judge's reasoning.

## II. Family Medical Leave Act Claim

Section 2615(a)(1) of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." (West 1997 Supp.). The FMLA provides, among other rights, a total of twelve (12) workweeks of leave during any one year to an eligible employee "unable to perform the functions of [her] position" due to "a serious health condition." 29 U.S.C. § 2612(a)(1)(D) (West 1997 Supp.). An eligible employee is one employed for at least twelve (12) months or 1,250 hours in the previous twelve (12) months with the employer from whom she seeks leave. 29 U.S.C. § 2611(2) (West 1997 Supp.). Employer, in the context of the Act, "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4) (West 1997 Supp.). The regulations explain that "[e]mployers covered by FMLA also include any . . . any successor in interest of a covered employer." 29 C.F.R. § 825.104(a) (West 1997).

Section 825.107 of the regulations lay out eight factors to consider in the determination of whether an employer is a "successor in interest." These factors "include" (and, by the use of that word, the regulations suggest that these are not the only factors to be considered): (1) continuity of operations, (2) use of same facility, (3) "[c]ontinuity of the work force," (4) similarity in working environment, (5) "[s]imilarity of supervisory personnel," (6) similarity of equipment and methods, (7) similarity of services, and (8) "ability of the predecessor to provide relief." 29 C.F.R. § 825.107 (West 1997). The regulations further explain:

> When an employer is a 'successor in interest,' employees entitlements are the same as if the employment by the predecessor and the successor were continuous employment by a single employer. For example, the successor, whether or not it meets FMLA coverage criteria, must grant leave

for eligible employees who had provided appropriate notice to the predecessor, or continue leave begun while employed by the predecessor, including maintenance of group health benefits during the leave and job restoration at the conclusion of the leave. A successor which meets FMLA's coverage criteria must count periods of employment and hours worked for the predecessor for purposes of determining employee eligibility for FMLA leave.

29 C.F.R. § 825.107(c) (West 1997). Therefore, under the FMLA, once an employer is found to be a successor in interest, he inherits the FMLA duties of his predecessor. The examples provided by the regulation only suggest the types of duties and liability that the successor acquires.

■ Magistrate Judge Crigler ruled that Sheriff Roger W. Mitchell is the successor in interest to Sheriff Peters. Almost all of the factors listed in the regulation remained constant despite the election of Sheriff Mitchell. There is substantial continuity in the operations of the employer, the services provided, the facilities used, the work environment, and the equipment used. The only changes were in supervisory personnel. Because of the substantial continuity of the employment factors between Sheriff Peters and Sheriff Mitchell, the magistrate judge properly found Sheriff Mitchell to be the successor in interest to Sheriff Peters and, therefore, liable to plaintiff for her FMLA claims.

Defendants contend that being a successor in interest for FMLA eligibility is different from being a successor in interest for purposes of liability. Neither the statute itself nor the regulations draw a distinction, and this court sees no reason to do so at this time. The defendant's objection is not supported by any citation of case law or statute and this court can find no support. Therefore, the objection is denied.

■ Defendants also object that plaintiff had no reasonable expectation of continued employment under Virginia law because her appointment is discretionary. Under Virginia law, "a sheriff is an independent constitutional officer whose duties and authority are defined by statute." *Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir.1990). Sher-

iff's deputies are at will employees serving at the discretion of the sheriff. *Id, citing* Va. Const. art. VII, § 4; *Whited v. Fields*, 581 F.Supp. 1444, 1453 (W.D.Va.1984), *abrogated on other grounds by Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978), *abrogation recognized in McDonald v. Dunning*, 760 F.Supp. 1156, 1169 (E.D.Va.1991). *Whited* explains that common law still controls the functions of the sheriff to a large degree in Virginia and that, at common law, a deputy of a constitutional officer came into existence in only one way: appointment by the constitutional officer. This being so, the deputy's position is entirely dependent on the sheriffs. When the term of office of the sheriff ends, so does that of the deputy. *Whited*, 581 F.Supp. at 1453, *citing* Va.Code § 15.1–48; *see also, Ramey v. Harber*, 431 F.Supp. 657, 663 (W.D.Va.1977), *aff'd in part*, 589 F.2d 753, 754–55 (4th Cir. 1978).

■■ The sheriff-elect has discretion to appoint or not to appoint any individual he chooses. *Jenkins*, 909 F.2d at 107. Because of this discretion, the deputy has no expectation of continued employment. *Ramey*, 431 F.Supp. at 663; *Whited* states that "since the sheriff is liable absolutely for all the acts of his deputies, the sheriff should have complete and unfettered control over who his deputies are." 581 F.Supp. at 1454. "[O]rdinary dismissals from government service which violate no fixed tenure or applicable statute are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983), *in Harris v. Wood*, 888 F.Supp. 747, 751 (W.D.Va.1995). However, the discretion to dismiss is not absolute. *Ramey*, 431 F.Supp. at 663. An employer cannot dismiss an employee for exercising her right to free speech, for example. *Harris*, 888 F.Supp. at 751. If federal law creates a right, the discretion of the sheriff to dismiss a deputy must yield to that right. Therefore, while plaintiff may have had no property interest in her continued employment in and of itself, she did have a property interest, created by the FMLA, in

not being dismissed because of her medically necessary absences. For this reason, the court finds that the magistrate judge properly refused to dismiss plaintiff's FMLA claim.

■ Defendants object that the sheriff is not liable for the acts of the County of Culpeper if they are the body that miscalculated the plaintiff's FMLA leave: However, the complaint indicates that the Sheriff may be the party responsible for the miscalculation. More importantly, the sheriff terminated plaintiff's employment even though she provided evidence from a physician of the medical necessity for her absence from work. Therefore, his final calculations of the leave available and his termination of her based on those calculations are the actions causing the injury to plaintiff. The sheriff is liable for those injuries which his actions have caused. Defendant's objection is again denied.

■ Defendant also objects that FMLA liability for any damages other than injunctive relief is barred by the Eleventh Amendment of the Constitution. Whether sovereign immunity operates in this situation is a question of fact not appropriate for decision at this time, Sovereign immunity may operate as a total jurisdictional bar or as a bar only to certain kinds of relief Wright, Miller, and Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3524 (1984). If the state is the party in name or the party in fact to the suit, the suit will be completely barred by sovereign immunity. *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Edelman v. Jordan,* 415 U.S. 651, 651, 94 S.Ct. 1347, 1350, 39 L.Ed.2d 662 (1974). The court will look past the named party to determine, essentially, from where the funds to pay any judgment will come. If damages will ultimately come from the state's pocket, those damages will be barred by sovereign immunity. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Ford Motor Co. v. Department of Treasury of State of Indiana,* 323 U.S. 459, 463–64, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945). However, if the monetary damages are only "ancillary" to the injunctive relief sought, then *Edelman* will allow such damages. *Edelman,* 415 U.S. at 651, 94 S.Ct. at 1350. Further, sovereign

immunity will not bar suits against a county, municipality, municipal agency, or an officer of any of the above, however, because these entities are not considered "arms of the state." *Owen v. City of Independence, Missouri,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673, *reh'g denied,* 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980); *Scott v. Greenville County,* 716 F.2d 1409 (4th Cir. 1983).

■ A suit may be permitted against a state officer to restrain unconstitutional actions by the officer under color of state law. *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908); *Scheuer,* 416 U.S. at 237, 94 S.Ct. at 1686–87; *Hafer v. Melo,* 502 U.S. 21, 27, 112 S.Ct. 358, 362–63, 116 L.Ed.2d 301 (1991). *Ex Parte Young* reasoned that when an officer acts unconstitutionally, he is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct" because the state cannot authorize unconstitutional conduct. 209 U.S. at 160, 28 S.Ct. at 454. However, the liability of a the officer does not extend to money damages. *"Ex Parte Young* is of no aid to a plaintiff seeking damages from the public treasury." *Scheuer,* 416 U.S. at 238, 94 S.Ct. at 1687, *citing Edelman,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Kennecott Copper Corp. v. State Tax Comm'n,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944).

Because the facts available at this time in the instant case are not clear as to the source of the funds for any damages sought in this case, it is proper to defer consideration of whether sovereign immunity will bar the damages sought by plaintiff until the facts can be developed more clearly. Should the state's purse be the ultimate source of funding, then the Eleventh Amendment would disallow such damages. However, should the purse be that of the county or a municipality, the Eleventh Amendment would erect no barrier to monetary relief. Defendant's objection to the Report and Recommendation of

the magistrate judge, therefore, is granted as to this issue.

### III. Section 1983 Claim

 Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (West 1994). Section 1983 "is not itself a source of substantive rights," but rather "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994), *citing Baker v. McCollan,* 443 U.S. 137, 145, n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979). These federal rights may be found in the Constitution or in federal statutes. *Livadas v. Bradshaw,* 512 U.S. 107, 132, 114 S.Ct. 2068, 2082–83, 129 L.Ed.2d 93 (1994); *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980); *Wilder v. Virginia Hosp. Assn.,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2516–17, 110 L.Ed.2d 455 (1990). However, *Pennhurst State School and Hospital v. Halderman* "recognized two exceptions to the application of section 1983 to statutory violations." First, section 1983 can only be used if the statute creates an enforceable right. *Wilder,* 496 U.S. at 509, 110 S.Ct. at 2517. As such, the provision must be "intend[ed] to benefit the putative plaintiff," it must do more than simply express a congressional preference for a certain kind of behavior, and the interest must not be "too vague and amorphous" to be enforceable. *Wilder,* 496 U.S. at 509, 110 S.Ct. at 2517, *citing Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448–49, 107 L.Ed.2d 420 (1989); *Pennhurst State School*

*and Hosp. v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 1540–41, 67 L.Ed.2d 694 (1981). Clearly, the FMLA creates a right: the right to retain employment despite illness in a potential plaintiff or her family.[1] Plaintiff's complaint indicates that she falls within the class of individuals intended to be benefitted by the FMLA. Moreover, unlike the finding statute (42 U.S.C. § 6010) at issue in *Pennhurst,* the FMLA delineates specifically the interest to be protected.

 Second, Congress must not have foreclosed private enforcement of the statute in question in the statute itself. *Pennhurst,* 451 U.S. at 19, 101 S.Ct. at 1540–41. When a statute includes a comprehensive remedial scheme, the courts will presume that Congress intended those remedies to be the only ones applicable to violations of that statute. The Supreme Court has said that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under section 1983." *Middlesex County Sewerage Authority v. National Sea Clammers Assoc'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1981). In *Chapman v. Houston Welfare Rights Organization,* Justice Stewart explained the reasoning behind the preclusion: when "a federal statute ... provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under section 1983." 441 U.S. 600, 674, n. 2, 99 S.Ct. 1905, 1945 n. 2, 60 L.Ed.2d 508 (dissenting opinion), *cited in, Middlesex,* 453 U.S. at 20, 101 S.Ct. at 2626–27.

 Plaintiff objects to the conclusion of the magistrate judge that the FMLA created a comprehensive scheme of enforcement which, therefore, precluded a section 1983 claim based on the FMLA violation. Plaintiff's objection is without merit. The FMLA focuses on very specific injuries and delineates narrowly the remedies for those inju-

---

1. Section 1983 provides " 'broad and sweeping' ... protection to basic civil rights." *Lynch v. Household Finance,* 405 U.S. 538, 544, 92 S.Ct. 1113, 1118, 31 L.Ed.2d 424 (1972). Such basic rights include property as well as personal rights. *Id.* at 546, 92 S.Ct. at 1119. Plaintiff's interest in continued employment, in the circumstances, is a property right protected by the FMLA.

ries. Section 2612 of the Act defines the leave which employers are required to give to their employees under certain circumstances. Section 2615 outlines the prohibited acts under the FMLA and Section 2617 provides a comprehensive remedial scheme which allows for action either by employees themselves or by the Secretary of Labor on behalf of employees whose rights have been violated. Because the injuries to which the Act applies are narrowly drawn and the remedies provided fully cover those injuries, the magistrate judge correctly determined that the FMLA provides a comprehensive enforcement scheme which forecloses a section 1983 claim. Plaintiff's objection to the dismissal of her section 1983 claim is denied.

## IV. *Conclusion*

After careful *de novo* review of the entire file, this court adopts the recommendations of the magistrate judge in part, denies the defendant's motion to dismiss as to the FMLA claim, and grants the defendant's motion to dismiss the Section 1983 claim.