**Kerrie W. BRIGGS, Plaintiff,**

v.

**Gary W. WATERS, William O. Watson, in his official capacity as Sheriff of the City of Portsmouth, and the City of Portsmouth Sheriff's Office, Defendants.**

**No. 2:06CV154.**

United States District Court, E.D. Virginia, Norfolk Division.

Oct. 3, 2006.

Douglas H. Fisher, Esq., Schaffer & Cabell PC, Richmond, VA, for Plaintiff.

Carlene B. Johnson, Esq., Perry Law Firm PC, Dillwyn, VA, for Defendant Gary W. Waters.

John A. Gibney, Jr., Esq., Thompson & McMullan, Richmond, VA, for Defendants William O. Watson and The City of Portsmouth Sheriff's Office.

## MEMORANDUM OPINION

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on Defendants City of Portsmouth Sheriff's Office and William O. Watson's Motion to Dismiss and Defendant Gary. W. Waters's Motion to Dismiss Amended Complaint. For the reasons set forth herein, the court **GRANTS–IN–PART** and **DENIES–IN–PART** each motion.

### I.   Factual and Procedural History [1]

On June 1, 1998, the City of Portsmouth Sheriff's Office ("the Sheriff's Office"), located in Portsmouth, Virginia, hired Plaintiff Kerrie W. Briggs ("Briggs") as a deputy sheriff. Am. Compl. ¶ 2 (July 12, 2006). During the course of her employment, Defendant Gary W. Waters ("Waters"), who was then the Sheriff of Portsmouth, sexually harassed Briggs. Id. ¶ 18. This harassment included sexually explicit comments, flirtatious conduct, and attempts to date her. Id. ¶¶ 5–7, 9–10. Briggs rejected Waters's advances. Id. ¶ 5.

---

1.   All facts are drawn from the allegations set forth in Briggs's amended complaint.

On November 21, 2004, Briggs was part of a traffic violation incident involving Leslie O. Cox ("Cox"), a City of Portsmouth police officer. *Id.* ¶ 11. Upon learning of the incident, Waters instructed Cox to charge Briggs with obstruction of justice. *Id.* ¶ 12. Briggs was convicted in Portsmouth City General District Court.[2] *Id.* ¶ 13. Waters fired Briggs after she was convicted. *Id.* ¶ 14. Other employees in the Sheriff's Office had been convicted of "criminal charges of a more serious nature" than obstruction of justice, but had not lost their jobs. *Id.* Briggs filed a complaint with the Equal Opportunity Employment Commission ("EEOC") in July 2005. *Id.* ¶ 17. In January 2006, William O. Watson replaced Waters as Sheriff of Portsmouth and rehired Briggs. *See id.* ¶ 3.[3]

On or about February 24, 2006, Briggs filed a complaint in the Circuit Court for the City of Portsmouth, naming Waters, Cox, and the City of Portsmouth ("the City") as defendants. On March 17, 2006, Waters, with the consent of Cox and the City, removed the case to this court. Briggs's complaint alleged sexual harassment and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[4] Waters and the City filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6).

On June 28, 2006, this court issued an Order dismissing Briggs's Title VII claims against Waters and the City, and granting Briggs leave to amend her complaint. *Briggs v. Waters,* No. 06–154, 2006 WL 1982758, *1 (E.D. Va. June 28, 2006). This court concluded that Briggs could not sue Waters in his individual capacity because

the Sheriff's Office, not Waters, was Briggs's employer within the meaning of Title VII. *Id.* at *2. The court further concluded that Briggs could not sue Waters in his official capacity because Watson had replaced Waters as Sheriff. *Id.* Finally, this court reasoned that Briggs could not bring a Title VII claim against the City because Briggs was an "employee of the Sheriff's Office only, an entity legally distinct from the City." *Id.*

On July 12, 2006, Briggs filed an amended complaint, adding as defendants the Sheriff's Office and Watson, in his official capacity as Sheriff ("Watson"). Count One of the amended complaint alleges sexual harassment and retaliation in violation of Title VII. Am. Compl. ¶¶ 18–25. Count Two alleges that Waters, in his individual capacity, violated 42 U.S.C. § 1983 by depriving Briggs of her right to equal protection of the laws under color of authority conferred by state law. *Id.* ¶ 28.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A district court should not dismiss a complaint under Rule 12(b)(6) "unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 346 (4th Cir.2005) (internal quotation omitted).

---

2. The obstruction of justice charge was later dismissed on appeal to the Portsmouth Circuit Court.

3. *See infra* note 9 and accompanying text.

4. The complaint also set forth a Malicious Prosecution claim against Cox. On May 3, 2006, an Agreed Order was signed, dismissing with prejudice this claim.

## III. Discussion

At a threshold level, the court must determine who are the proper defendants in this lawsuit. The court then turns to the issue of whether Briggs has stated a claim upon which relief can be granted.

### A. The Sheriff's Office And Watson, In His Official Capacity, Are Proper Defendants As To Briggs's Title VII Claims.

The Sheriff's Office and Watson assert that they are not proper defendants in this lawsuit. Br. in Supp. of Mot. to Dismiss at 2–6. They argue that the Sheriff's Office is not a proper defendant because it is not a legal entity susceptible to suit. *Id.* at 2–3 (explaining that suing the Sheriff's Office is the equivalent of suing a building or facility). They further argue that Sheriff Watson's administration cannot be held liable for the acts of Waters because Watson's administration is legally independent from Waters's administration. *Id.* at 4.[5] Finally, they argue that because Watson was not named in Briggs's original EEOC complaint, Briggs may not bring a Title VII action against him. *Id.* at 6–7. The court addresses each argument in turn.

### 1. Briggs May Bring Title VII Claims Against "The Sheriff's Office."

The qualified voters of each county and city in Virginia elect a sheriff. VA. CONST. ART. VII, § 4. The "sheriff is a constitutional officer and his duties are regulated and defined by . . . statute." *Hilton v.*

*Amburgey,* 198 Va. 727, 96 S.E.2d 151, 152 (1957). Although neither the constitution nor the Virginia Code explicitly creates a "sheriff's office," the Virginia Code uses this term repeatedly. *See, e.g.,* VA. CODE ANN. § 15.2–1613 (2006) ("Any county or city may appropriate funds for the operation of the sheriff's office."); § 32.1–48.06 (defining law-enforcement agency as "any sheriff's office, police department, . . . or other agency or department").

■ For several reasons, the court concludes that Briggs can bring her claims against the Sheriff's Office. First, the court has already ruled that a sheriff in his or her individual capacity is not an employer within the meaning of Title VII. *Briggs,* 2006 WL 1982758 at *2; *see also Blankenship v. Warren County, Va.,* 931 F.Supp. 447, 449 (W.D.Va.1996) (ruling that a Sheriff "cannot be held liable in his individual capacity under Title VII"). Implicit in this conclusion is the proposition that either the sheriff's office or the sheriff in his or her official capacity is an employer within the meaning of Title VII. *See King v. McMillan,* No. 05–521, 2006 WL 2126279, *1 (W.D.Va. July 28, 2006) (concluding that a sheriff was a proper defendant in her official capacity); *Wiatt v. Marrs,* No. 04–461, 2005 WL 552563, *1 (W.D.Va. Feb. 22, 2005) (same); *Efird v. Riley,* 342 F.Supp.2d 413, 420–21 (M.D.N.C.2004) (noting that district courts in the Fourth Circuit have consistently assumed that "the office of sheriff" is properly named as

---

**5.** Sheriff Defendants also contend that Watson is not a proper defendant because Briggs did not sue Waters in his official capacity, and, consequently, substitution of Watson as a defendant under Federal Rule of Civil Procedure 25(d) is improper. Br. in Supp. of Mot. to Dismiss at 3–4. This argument is misplaced and irrelevant at this juncture. Briggs brought this lawsuit on February 24, 2006, after Waters left office, and she sued Waters in his individual capacity. Briggs served Wa-

ters with the original complaint, which was then removed to this court on March 17, 2006. As a result of this court's June 28, 2006, Order, Briggs filed an amended complaint, naming the Sheriff's Office and Watson, in his official capacity, as defendants. *See Briggs,* 2006 WL 1982758, *4; *supra* at 3. For the reasons set forth in this Memorandum Order, *infra* Part III.A.2, Watson's administration is liable for Title VII violations committed during Waters's administration.

an employer within the meaning of Title VII). After all, persons working in a sheriff's office must work for someone.

Second, not only does the Virginia Code refer to both a sheriff and a sheriff's office, but the Virginia Attorney General, in interpreting the Virginia Code, has used the terms "sheriff's office" and "sheriff" interchangeably. *See, e.g.,* Op. Va. Att'y Gen. 04–045 (2004) ("In counties without county police departments that rely on sheriff's offices to perform law-enforcement functions and serve as officers of the courts and local jailers, the local sheriff's office is the 'primary law enforcement agency.' "); Op. Va. Att'y Gen. 04–035 (2004) ("Ultimately, the decision whether a sheriff's office is complying with the standard uniform specifications would be determined by a civil proceeding in the appropriate circuit court."). Third, and finally, it is not uncommon for a sheriff's office to appear as a named party in Virginia courts. *See, e.g., Lindenfeld v. City of Richmond Sheriff's Office,* 25 Va.App. 775, 492 S.E.2d 506 (1997); *Stafford County Sheriff's Office v. DeBord,* 22 Va.App. 312, 469 S.E.2d 88 (1996). Accordingly, Briggs may maintain her Title VII claims against the Sheriff's Office.

### 2. The Court May Hold Watson's Administration Liable For Title VII Violations Committed During Waters's Administration.

█ The court must also address whether it can hold the Sheriff's Office

and Watson (collectively, "Sheriff Defendants")[6] liable under Title VII for violations committed during Waters's administration. Sheriff Defendants present numerous arguments as to why Briggs cannot assert claims against the administration of Watson for wrongs committed by Waters. They frame the issue as a straightforward question of successor liability. *See* Br. in Supp. of Mot. to Dismiss at 4–6. Because Watson is not Waters's successor, they argue, his administration cannot be held liable for Waters's acts. *Id.* at 4. Sheriff Defendants correctly note that when a sheriff ceases to serve, the sheriff's deputies lose their positions. *See Ramey v. Harber,* 589 F.2d 753, 755 (4th Cir.1978). Also, the Virginia Attorney General has opined that a sheriff may not enter into an agreement that binds his successors in office. Op. Va. Att'y Gen. 02–065 (2002). These circumstances, they argue, establish that each sheriff's administration is legally independent from the former administration. Br. in Supp. of Mot. to Dismiss at 4–5.[7]

█ Sheriff Defendants' reliance on state law, however, is misplaced because the issue of whether to impose successor liability under Title VII is a question of federal law, rather than state law. *See United States v. Gregory,* 871 F.2d 1239, 1246 (4th Cir.1989) (noting a sheriff's argument that each sheriff is legally independent from his predecessor under state law,

---

**6.** *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (explaining that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

**7.** The court notes that the Virginia Attorney General's opinions merely establish that each sheriff possesses some degree of independence from his predecessor. For example, in concluding that a sheriff may not bind his or her successors contractually, the Virginia At-

torney General relied on Dillon's Rule, which provides that "local governing bodies may exercise only those powers conferred expressly or by necessary implication." Op. Va. Att'y Gen. 02–065 (2002). The Virginia Attorney General has not addressed whether a sheriff may be liable for the acts of his predecessor. In any event, federal law, not state law, controls the issue of successor liability under Title VII. *See infra* at 8–12.

but applying federal law to determine whether to grant injunctive relief against the current sheriff); *King v. McMillan,* No. 05–521, 2006 WL 2126279, *2 (W.D.Va. July 28, 2006) (explaining that the issue turns on whether the defendant is an employer within the meaning of Title VII); *see also Jolliffe v. Mitchell,* 971 F.Supp. 1039, 1041–42 (W.D.Va.1997) (applying federal regulations to determine whether a sheriff was liable under the Family Medical Leave Act as the "successor in interest" to the prior sheriff).

In *Gregory,* the United States brought a Title VII action against a sheriff based on his refusal to consider women for deputy sheriff positions. 871 F.2d at 1239. The United States sought prospective relief to prevent further discrimination, and sought back pay and jobs for certain women who were denied employment. *Id.* After the suit was filed, the sheriff was defeated in an election, a different sheriff took office, and this new sheriff was substituted as the defendant. *Id.* The new sheriff argued, among other things, that prospective relief was not an appropriate remedy because, under Virginia law, a sheriff's administration is legally separate from the prior sheriff's administration. *Id.* at 1246. The Fourth Circuit rejected this argument, explaining that district courts "clearly have the authority and should exercise the power to grant injunctive relief even after apparent discontinuance of unlawful practices." *Id.* The court noted that Title VII states that if a district court finds that an employer " '*has* intentionally *engaged in* or is intentionally engaging in an unlawful employment practice ... [the practice may be enjoined].' " *Id.* at 1246 n. 28 (alteration in original) (quoting 42 U.S.C. § 2000e–5(g)(1)). In addition, the court deemed a back pay damage award appropriate, and remanded the case for further proceedings in the district court. *Gregory,* 871 F.2d at 1247 & n. 30.

The reasoning of the Fourth Circuit in *Gregory* applies with equal force in this case. The provision of Title VII relied on in *Gregory* provides as follows:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

42 U.S.C.A. § 2000e–5; *see also* § 2000e(n) (explaining that "[t]he term 'respondent' means an employer, employment agency, [or one of several other enumerated entities]"). In other words, Title VII "vests broad equitable discretion in the federal courts to order such affirmative action as may be appropriate to remedy a violation including back pay and such other equitable relief as the court deems appropriate." *Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336, 356 (4th Cir.1994). Thus, just as it was appropriate for the Fourth Circuit in *Gregory* to grant injunctive relief against the new sheriff and to award back pay based on Title VII violations committed by the former sheriff, it would be appropriate for this court in this case to allow Briggs to recover damages against Sheriff Defendants for Title VII violations committed by Waters.

Moreover, the court's conclusion in this case is consistent with the decision of the United States District Court for the Western District of Virginia in *King,* 2006 WL 2126279. In that case, a plaintiff brought

a Title VII action against a sheriff, alleging, among other things, that the sheriff had maintained a hostile work environment. *Id.* at *1. After a new sheriff took office, the court substituted the new sheriff as the defendant pursuant to Federal Rule of Civil Procedure 25(d). *Id.* The new sheriff argued that this substitution was improper because the new sheriff .was not the former sheriff's successor within the meaning of Rule 25(d). *Id.* at *2. The court rejected this argument, concluding that a new sheriff is the former sheriff's successor and is, therefore, liable under Title VII in an action for damages. *Id.*

The instant case is analogous to *King.* Just as it was proper for the district court in *King* to hold the new sheriff liable for damages based on the acts of the former sheriff, it would be proper for this court in this case to hold Sheriff Defendants accountable for any Title VII violations committed during Waters's administration. Accordingly, Briggs may recover against Watson's administration for Title VII violations committed during Waters's administration.[8]

### 3. It Is Irrelevant That Watson Did Not Participate In Proceedings Before The EEOC.

Sheriff Defendants further contend that Watson is not a proper defendant because

he lacked formal notice of, and did not have an opportunity to participate in, proceedings before the EEOC. Br. in Supp. of Mot. to Dismiss at 6–7. This argument is also unconvincing, as Watson was not sheriff when the EEOC proceeding occurred. He is now in this suit in his official capacity under successor liability. *See supra* Part III.A.2. The fact that Watson did not personally participate in proceedings before the EEOC does not distinguish this case from *Gregory* and *King,* where courts granted relief against sheriffs based on Title VII violations committed by their predecessors. *See Gregory,* 871 F.2d at 1239, 1246; *King,* 2006 WL 2126279, at *1–2.[9]

### B. Briggs May Not Bring Her Title VII Claims Against Waters.

The court has already ruled that the Sheriff's Office, rather than Waters, is Briggs's employer within the meaning of Title VII. *Briggs,* 2006 WL 1982758 at *2. The court declines to revisit the issue at this time. *See Columbus–Am. Discovery Group v. Atl. Mut. Ins. Co.,* 203 F.3d 291, 304 (4th Cir.2000) (explaining that under the law of the case doctrine, "when a court decides upon a rule of law, that decision

---

8. The court notes that neither Plaintiff nor Sheriff Defendants provided the court with information indicating (1) what entity assumes the official assets and liabilities of a sheriff's predecessor in Virginia, or (2) who pays judgments in Virginia against a sheriff in his official capacity. Both of these points are surely well-settled.

9. Sheriff Defendants' argument further lacks merit because Briggs brought her EEOC complaint against the Sheriff's Office, and the EEOC substituted Watson as the respondent to that complaint. On July 16, 2005, Briggs brought her EEOC complaint against the Sheriff's Office. *See* City of Portsmouth Br. in Supp. of Mot. to Dismiss for Lack of Juris-

diction Ex. 1. When Watson replaced Waters as Sheriff of Portsmouth in January 2006, he and the Sheriff's Office became one and the same. *See supra* note 6. On March 31, 2006, the EEOC issued a Dismissal and Notice of Rights, notifying Briggs of her right to bring a lawsuit against respondent "Sheriff Bill Watson" of the Portsmouth Sheriff's Office. *Id.* at Ex. 2. On April 10, 2006, Briggs sought leave of this court to file an amended complaint naming the Sheriff's Office as a defendant. As a result of this court's June 28, 2006, Order, Briggs filed an amended complaint, naming both the Sheriff's Office and Watson as defendants. *See Briggs,* 2006 WL 1982758, *4; *supra* at 3.

should continue to govern the same issues in subsequent stages in the same case"). Briggs's Title VII claims against Waters are therefore DISMISSED.

### C. Briggs Has Failed To State A Claim Upon Which Relief Can Be Granted As To Some, But Not All, Of Her Claims.

In light of the above discussion, the court must determine whether it should dismiss the following claims under Rule 12(b)(6): (1) Briggs's Title VII claims against Sheriff Defendants, (2) Briggs's § 1983 claim against Waters, and (3) Briggs's § 1983 claim against Sheriff Defendants.

#### 1. Briggs Has Properly Stated A Sexual Harassment Claim Under Title VII Against Sheriff Defendants.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). It also prohibits retaliation against an employee, making it unlawful for "an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e-3(a).

In this case, Briggs's amended complaint alleges claims of retaliation and sexual harassment. It can be fairly read to allege both hostile work environment sexual harassment and quid pro quo sexual harassment.

#### a) Retaliation

Briggs has failed to state a claim for retaliation under Title VII. To establish a prima facie case of retaliation, a plaintiff must prove three elements: "(1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir.1998). Protected activities consist of (1) "participating in an ongoing investigation or proceeding under Title VII" and (2) "opposition activity." *Id.* at 259. Opposition activity includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id.*

In this case, Briggs has not stated a claim for retaliation under Title VII because she has not alleged that she was engaged in any protected activity when Waters fired her. *See Iodice v. United States*, 289 F.3d 270, 281 (4th Cir.2002) ("Dismissal of a complaint for failure to state facts supporting each of the elements of a claim is, of course, proper."). She was not engaged in the protected activity of participation when fired. *See* Am. Compl. ¶ 4, 17 (alleging that Briggs was terminated in February 2005 and filed her complaint with the EEOC in July 2005). Also, Briggs does not allege that she utilized informal grievance procedures or voiced her opinion to bring attention to the sexual harassment problem. Her retaliation claim is therefore DISMISSED.

#### b) Hostile Work Environment Sexual Harassment

An employer violates Title VII when the workplace is permeated with gender based "intimidation, ridicule, and

insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Howard v. Winter,* 446 F.3d 559, 565 (4th Cir.2006). To establish a sexual harassment claim, a plaintiff must show that "the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Id.* (internal quotation omitted).

■ In this case, Briggs has alleged sufficient facts to state a hostile work environment claim. She alleges the occurrence of unwelcome sexual advances. Am. Compl. ¶ 18. She also describes a "sexually hostile environment" created by "Waters and the Sheriff's Office" that interfered with her ability to work. *Id.* ¶ 23.

#### c) Quid Pro Quo Sexual Harassment

■ Briggs has also stated a claim under Title VII based on quid pro quo sexual harassment. To establish a prima facie case of quid pro quo sexual harassment under Title VII, a plaintiff must establish the following: "(1) she belongs to a protected group; (2) she was subject to unwelcome sexual advances; (3) the unwelcome conduct was because of sex; (4) her reaction to the harassment affected tangible aspects of her employment; and (5) there are grounds for holding the employer liable for the employee harasser's conduct." *West v. MCI Worldcom, Inc.,* 205 F.Supp.2d 531, 543 (E.D.Va.2002); *see Reinhold v. Virginia,* 135 F.3d 920, 931 (4th Cir.1998); *Spencer v. General Elec. Co.,* 894 F.2d 651, 658 (4th Cir.1990). The fifth element is automatically satisfied where a supervisor harasses an employee. *Spencer,* 894 F.2d at 658 n. 10.

■ In this case, Sheriff Defendants concede that Briggs has stated a claim for sexual harassment. *See* Br. in Supp. of Mot. to Dismiss at 8 (noting that Briggs has alleged a "straightforward harassment claim"). The court deems this concession appropriate. Briggs alleges that she is female and was treated differently than employees who had not rebuffed Waters's unwelcome sexual advances. Am. Compl. ¶¶ 1, 21. Her amended complaint explains that "[m]any similarly situated persons outside of Plaintiff's protected class were convicted of criminal charges of a more serious nature than Plaintiff's during the time when Plaintiff worked for defendant Waters at the Sheriff's Office and were not punished as severely as Plaintiff." *Id.* ¶ 14. She also lists a specific example of an employee who allegedly committed a more serious crime than Briggs but was not fired or suspended. *See id.* In other words, she alleges that she was discharged because she had rebuffed Waters's sexual advances. Such allegations state a claim for sexual harassment under Title VII.

#### 2. Briggs Has Stated A Claim Under § 1983 Against Waters.

With respect to her claim under § 1983, Briggs alleges that Waters deprived her of her constitutional right to equal protection. Waters argues (1) that Briggs has failed to state a claim under § 1983 and (2) that, in any event, he is entitled to qualified immunity.

#### a) Equal Protection

■ Section 1983 creates a cause of action for a person deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of state law. 42 U.S.C. § 1983. The Fourth Circuit has explained that "the equal protection clause confers on a public employee a federal constitutional right to be free from gender discrimination" and that "sexual harassment has long been recognized to be a type of

gender discrimination." *Beardsley v. Webb*, 30 F.3d 524, 530–31 (4th Cir.1994). The elements that establish a prima facie case of discrimination under Title VII also establish a prima facie case of discrimination under § 1983. *Gairola v. Virginia Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir.1985).

In this case, Waters argues that Briggs cannot assert a § 1983 claim against him. The court disagrees. First, Waters argues that Briggs cannot assert a violation of her right to equal protection because she could have brought a claim against him under Title VII. *See* Waters's Mem. in Supp. of Mot. at 5 (citing *Hughes v. Bedsole*, 48 F.3d 1376, 1383 n. 6 (4th Cir.1995) (concluding that the plaintiff could not "bring an action under § 1983 for violation of her Fourteenth Amendment rights because [the plaintiff] could have instituted a Title VII cause of action")). This contention is incorrect with respect to both fact and law. In this case, Briggs could not have brought a Title VII action against Waters because Waters was not her employer within the meaning of Title VII. *Briggs*, 2006 WL 1982758 at *2; *see supra* Part III.B. Moreover, the Fourth Circuit has recently clarified that the existence of a Title VII remedy does not preclude a claim under § 1983. *Booth v. Maryland*, 327 F.3d 377, 382–83 (4th Cir.2003) (explaining why *Hughes* is not controlling precedent).

Second, Waters argues that Briggs has not stated an equal protection claim because she has failed to allege that similarly situated persons outside her protected class were not discharged from their positions. Waters's Mem. in Supp. of Mot. at 9–14. This argument is unavailing because not all of Briggs's averments fail in this regard. *See* Am. Compl. ¶ 14; *see also supra* Part III.C.1.c (concluding that Briggs has stated a quid pro quo sexual harassment claim under Title VII). In any event, Briggs has also stated an equal protection claim based on the existence of a hostile work environment. *See supra* Part III.C.1.b (concluding that Briggs has stated a hostile work environmental sexual harassment claim under Title VII); *Beardsley*, 30 F.3d at 530–31 (explaining that sexual harassment is a form of gender discrimination); *Gairola*, 753 F.2d at 1285 (explaining that the same elements that establish discrimination under Title VII also establish discrimination under § 1983).

### b) Qualified Immunity

Waters argues that he is entitled to qualified immunity with respects to Briggs's § 1983 claim. As an initial matter, the court notes that it is appropriate to raise qualified immunity as a defense in a Rule 12(b)(6) motion. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir.2006). Government officials are entitled to the defense unless: "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Id.* (internal quotations omitted).

In this case, Briggs has stated a § 1983 claim upon which relief can be granted based on the existence of (1) a hostile work environment and (2) quid pro quo sexual harassment. The court must therefore assess whether the violation was "of a clearly established right of which a reasonable person would have known." *Id.* As discussed below, the court concludes that although qualified immunity shields Waters as to Briggs's allegations of hostile work environment sexual harassment, it does not protect Waters as to Briggs's allegations of quid pro quo sexual harassment.

As the Fourth Circuit has explained, "the line between a merely unpleasant

working environment and a hostile or deeply repugnant one may be difficult to discern." *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir.1996). In *Hopkins*, the Fourth Circuit concluded that a plaintiff had failed to establish a prima facie case of sexual harassment under Title VII where (1) incidents of harassment allegedly occurred intermittently over a seven-year period, and (2) such incidents did not include overt sexual propositions or touching in a sexual manner. *Id.* at 753–54. In the instant case, Briggs has not alleged that Waters made any overt sexual propositions or touched her in an inappropriate manner. Thus, with respect to Briggs's allegations of hostile work environment sexual harassment, the court cannot conclude that Waters violated a clearly established right of which a reasonable person would be aware. The instant case is simply too analogous to *Hopkins*.

Qualified immunity, however, does not shield Waters from Briggs's allegations of quid pro quo sexual harassment. The gravamen of Briggs's amended complaint is that she was discharged because she had rebuffed Waters's sexual advances. *See* Am. Compl. ¶¶ 26–32. The right to be free from such sexual discrimination is a clearly established right of which a reasonable person would know. It is clearly established that conduct constituting intentional sexual discrimination within the meaning of Title VII is also actionable under § 1983. *Gairola*, 753 F.2d at 1285; *see Wright v. Rolette County*, 417 F.3d 879, 884 (8th Cir.2005) (explaining that "[s]exual harassment claims under section 1983 are analyzed under the same standards developed in Title VII litigation"); *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir.1995) (noting that "[i]n a case such as this alleging disparate treatment," the elements of a cause of action under § 1983 and Title VII are

the same); *see also Lankford v. City of Hobart*, 27 F.3d 477, 480 (10th Cir.1994) (explaining that in 1989, it became clearly established in the Tenth Circuit that sexual harassment is actionable under § 1983, even where the sexual harassment is not coupled with firing or discharge). And it is clearly established that discharging an employee because the employee has rebuffed sexual advances violates Title VII. *See Garber v. Saxon Bus. Prods., Inc.*, 552 F.2d 1032, 1032 (4th Cir.1977) (per curiam) (reversing a district court's decision to dismiss a complaint where the plaintiff alleged, among other things, that her male supervisor fired her for rebuffing sexual advances); *see also Rachel–Smith v. FTData, Inc.*, 247 F.Supp.2d 734, 746–47 (D.Md.2003) (concluding that a plaintiff established a prima facie case of sexual harassment under Title VII where the plaintiff alleged that her male supervisor placed her on probation and then transferred her to a new location because she had rebuffed his sexual advances). As the Code of Federal Regulations explains, "[h]arassment on the basis of sex is a violation of . . . Title VII," and

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

29 C.F.R. § 1604.11 (2006).

### 3. Briggs Has Stated A § 1983 Claim Against Sheriff Defendants.

To recover against a local government unit under § 1983, "the plaintiff must show that the execution of a policy or custom of the municipality caused the violation." *Love–Lane v. Martin*, 355 F.3d

766, 782 (4th Cir.2004). Liability may attach, however, for a single decision or violation by a person who possesses "final authority to establish municipal policy with respect to the action ordered." *Id.* (internal quotations omitted). In this case, Waters allegedly terminated Briggs. It is clear that a sheriff has final decision-making authority for such decisions. *Jenkins v. Weatherholtz,* 909 F.2d 105, 107 (4th Cir.1990) (explaining that "sheriff's deputies are at will employees serving at the discretion of their sheriffs"). Thus, Sheriff Defendants may be held liable under § 1983 for the acts of Waters.[10]

### IV. Conclusion

For the reasons set forth above, the court DISMISSES (1) Briggs's Title VII retaliation and sexual harassment claims against Waters, and (2) Briggs's Title VII retaliation claim against the Sheriff's Office and Watson. Defendants' motions are **DENIED** as to all other claims. Thus, the following claims remain pending in this lawsuit at this juncture: (1) Briggs's Title VII sexual harassment claim against the Sheriff's Office and Watson; (2) Briggs's § 1983 claim against Waters; and (3) Briggs's § 1983 claim against the Sheriff's Office and Watson. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to counsel for Plaintiff and Defendants.

**IT IS SO ORDERED.**[11]

### INDEX

I. Factual and Procedural History .......................................... 511

II. Standard of Review ................................................. 512

III. Discussion ...................................................... 513
    A. The Sheriff's Office And Watson, In His Official Capacity, Are Proper Defendants As To Briggs's Title VII Claims ............................. 513
        1. Briggs May Bring Title VII Claims Against "The Sheriff's Office" ..... 513
        2. The Court May Hold Watson's Administration Liable For Title VII Violations Committed During Waters's Administration ................ 514
        3. It Is Irrelevant That Watson Did Not Participate In Proceedings Before The EEOC ............................................ 516
    B. Briggs May Not Bring Her Title VII Claims Against Waters ................ 516
    C. Briggs Has Failed To State A Claim Upon Which Relief Can Be Granted As To Some, But Not All, Of Her Claims .............................. 517
        1. Briggs Has Properly Stated A Sexual Harassment Claim Under Title VII Against Sheriff Defendants ................................... 517
            a) Retaliation ............................................... 517
            b) Hostile Work Environment Sexual Harassment ..................... 517
            c) Quid Pro Quo Sexual Harassment ................................ 518
        2. Briggs Has Stated A Claim Under § 1983 Against Waters .............. 518
            a) Equal Protection ........................................... 518
            b) Qualified Immunity ......................................... 519
        3. Briggs Has Stated A § 1983 Claim Against Sheriff Defendants .......... 520

---

**10.** Sheriff Defendants have not raised Eleventh Amendment immunity as a defense at this juncture.

**11.** An Index of this Memorandum Opinion is attached for reference purposes and made a part hereof.