PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

KAREN LAUGHLIN,
Plaintiff-Appellant,

v.

METROPOLITAN WASHINGTON AIRPORTS
AUTHORITY; AUGUSTUS MELTON, JR.,
Defendants-Appellees.

No. 97-1188

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Robert E. Payne, District Judge.
(CA-96-1284-A)

Argued: April 7, 1998

Decided: July 2, 1998

Before WILLIAMS, Circuit Judge, PHILLIPS, Senior Circuit Judge,
and OSTEEN, United States District Judge for the Middle District
of North Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Senior Judge Phillips and Judge Osteen joined.

_____

COUNSEL

ARGUED: Jerry William Boykin, REDMON, BOYKIN & BRAS-
WELL, L.L.P., Alexandria, Virginia, for Appellant. Morris Kletzkin,
FRIEDLANDER, MISLER, FRIEDLANDER, SLOAN & HERZ,
Washington, D.C., for Appellees. ON BRIEF: Jerome Ostrov, Mark

D. Crawford, FRIEDLANDER, MISLER, FRIEDLANDER, SLOAN
& HERZ, Washington, D.C., for Appellees.

_____

**OPINION**

WILLIAMS, Circuit Judge:

Karen Laughlin appeals the grant of summary judgment on her
claim of retaliatory discharge in violation of Title VII, 42 U.S.C.A.
§ 2000e-3 (West 1994), in favor of her former employer, Metropoli-
tan Washington Airport Authority (the MWAA). Title VII prohibits
an employer from retaliating against a worker for either participating
in a Title VII proceeding or opposing an employer's discriminatory
practices.[1] See 42 U.S.C.A. § 2000e-3(a). Laughlin argues that the
district court erred when it determined that the unauthorized removal
of documents from her boss's desk constituted opposition rather than
participation under Title VII. See 42 U.S.C.A. § 2000e-3(a). Addi-
tionally, she asserts that the district court erred when it applied an
improper balancing test, which incorporated a rebuttable presumption,
to the facts of her case. Finally, Laughlin alleges that the district court
abused its discretion when it did not give her appropriate notice that
it intended to treat the motion captioned, "Motion to Dismiss, or, in
the alternative, Motion for Summary Judgment," as a motion for sum-
mary judgment under Rule 56. Because we determine that summary
judgment was appropriate, we affirm.

I.

These facts, drawn from Laughlin's pleadings, affidavits, and
depositions, are expressed in the light most favorable to her as the
non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

_____

[1] 42 U.S.C.A. § 2000e-3(a) provides in pertinent part:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees . . . because he has
> opposed any practice made an unlawful employment practice . . .
> or because he has . . . assisted, or participated in any manner in
> an investigation, proceeding, or hearing under this subchapter.

2

255 (1986) (stating that an appellate court reviewing a grant of summary judgment is required to view the facts in the light most favorable to the non-moving party and must draw all reasonable inferences therefrom).

Essential to understanding the incident that directly led to Laughlin's termination are the events related to another MWAA employee. Kathy LaSauce, an operations officer at the MWAA, filed an informal complaint with the EEO officer at the MWAA against William Rankin, LaSauce's supervisor. In her complaint, she alleged that Rankin had retaliated against her for providing testimony in another operations officer's EEO action. Initially LaSauce took her complaint to the Washington National Airport manager, Augustus Melton, Jr., in April 1994. Melton took steps to settle the complaint informally. Those steps failed, and LaSauce filed a formal complaint with the MWAA EEO officer and tendered her resignation. In the process of investigating and attempting to settle the LaSauce/Rankin dispute, in September 1994, Melton drafted a written warning to Rankin regarding the inappropriate retaliatory actions that he had taken against LaSauce. The written warning, however, was never formalized; it was neither signed by Melton nor seen by Rankin, it was simply prepared and left on Melton's desk. At about the same time that LaSauce's resignation became effective and Melton had drafted the written warning, Rankin was selected for the job of El Paso Airport manager and tendered his resignation to the MWAA officials.

Meanwhile, Laughlin, a secretary to Melton, reported directly to the airport manager's staff assistant. During the course of her regular duties, on or about September 29, 1994, she discovered a copy of the unsigned written warning on Melton's desk addressed to Rankin. She noticed immediately that the written warning discussed the LaSauce dispute. The written warning was date-stamped September 8, 1994. Laughlin believed that the existence of the dated warning on the desk was highly irregular because correspondence was not generally date-stamped at the MWAA until it was in final form awaiting signature. Alongside the written warning she found Rankin's resignation letter explaining that he had been offered the position in El Paso, and a news clipping, predating the resignation letter, from an El Paso newspaper mentioning that Rankin was the front runner for the position in El Paso. Laughlin was so surprised to see the unsigned correspon-

3

dence on her boss's desk that she immediately concluded that he was engaging in a coverup to prevent LaSauce from having adequate access to relevant documents for a future lawsuit. As a result of these suspicions, Laughlin removed the documents, photocopied them, and replaced the originals on her boss's desk. She sent the copies to LaSauce with a note stating that she thought LaSauce might find them interesting.

Laughlin's removal and copying of the documents was discovered in 1996 during a deposition in a civil suit filed by LaSauce. Laughlin was terminated as a result of removing the documents. Her termination notice stated in pertinent part that:

> 1) you are a confidential employee in that you are an employee who acts in a confidential capacity with respect to me, the Airport Manager, who effectuates management policies in labor-management relations; 2) you released a draft letter of reprimand, a personnel related document which is confidential by nature; 3) you released personal documents of Mr. William Rankin's, without his or my consent, that had been sent to me for my information; 4) you sent these documents to Ms. Kathy LaSauce on your own accord, without my consent; and 5) according to Ms. LaSauce's sworn deposition, she never asked you for these documents.

(J.A. at 20.)

II.

As a result of her termination, Laughlin filed a complaint with the EEOC on April 18, 1996, alleging retaliatory dismissal. The EEOC adjudicated the complaint and determined that the charge of unlawful retaliation should be dismissed and issued a Notice of the Right to Sue on June 20, 1996. Subsequently, Laughlin filed a complaint in the district court on September 16, 1996, asserting a claim for unlawful retaliation in violation of Title VII, 42 U.S.C.A. § 2000e-3 (West 1994). The MWAA filed as its responsive pleading a "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment" to which it attached affidavits, a list of points upon which no material facts were in dispute, the documents received by LaSauce, and several

4

excerpts from depositions taken in another case. Laughlin filed a memorandum in opposition to the motion and attached an affidavit.

The district court held a hearing on the motion, characterized the motion as one for summary judgment because matters outside the pleadings had been introduced, and granted summary judgment to the MWAA. The district court issued a Memorandum Opinion in which it outlined the rationale for granting summary judgment. In its opinion, the district court noted that to prevail on a Title VII claim of retaliatory termination, a plaintiff must first prove that she engaged in protected activity. Protected activity under Title VII is divided into two categories, opposition and participation.[2] The district court decided as an initial matter that Laughlin's act of removing documents from her boss's desk did not constitute participation because there was no ongoing investigation or proceeding relating to LaSauce at the time of the incident. Therefore, the district court analyzed Laughlin's actions under the opposition clause.

The court noted that a balancing test is usually applied to determine whether opposition activity is protected under Title VII. See Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981) (adopting balancing test first articulated in Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 231 (1st Cir. 1976)). The test balances the purpose of the Act to protect persons engaging in reasonable activities opposing discrimination, against Congress' desire not to prevent employers from legitimately disciplining their employees. See id. The district court concluded, however, that the balancing test should not apply in this case. Rather, it concluded that there should be a presumption against finding surreptitious, dishonest, and disloyal behavior to be protected activity under Title VII. The district court applied the presumption, and determined that Laughlin could not overcome it. As an alternative holding, the district court applied the long-standing balancing test (sans presumption) to determine whether Laughlin's activity was protected under the opposition clause. The district court balanced the competing interests of Laughlin and the MWAA and determined that Laughlin's subjective belief that she needed to purloin the written warning and accompanying infor-

---

**2** For the relevant text of 42 U.S.C.A. § 2000e-3(a) (West 1994), see ante n.1.

5

mation to preserve the items as documentary evidence was completely unsupported. The district court also indicated that Laughlin had made an insufficient showing that the MWAA's internal grievance procedure would have proven inadequate to address her concerns about the documents. Because the court concluded that Laughlin's asserted reasons for taking her boss's documents were inadequately supported by the affidavits before it, it concluded that Laughlin's interest in promoting the nondiscriminatory purpose of Title VII was outweighed by her employer's interest in maintaining confidentiality and loyalty.

Laughlin filed a timely notice of appeal. She claims that the district court erred in three respects. First, she argues that the district court erred when it analyzed her claim under the opposition rather than the participation clause of 42 U.S.C.A. § 2000e-3(a). Next, she argues that the district court erred in adopting a rebuttable presumption that disloyal activity is not protected opposition activity, rather than applying the well-established balancing test for analyzing such questions. Finally, Laughlin argues that the district court abused its discretion when it converted the MWAA's 12(b)(6) motion into a motion for summary judgment under Rule 56, and thereby denied Laughlin adequate opportunity for discovery. We address these arguments in turn.

III.

Summary judgment is appropriate when a party who will bear the burden at trial fails to make a showing sufficient to establish an essential element of the case, see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), such that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c). We review a grant of summary judgment de novo, see Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988), and view the facts in the light most favorable to the non-moving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Guided by these principles, we address Laughlin's arguments arising from her Title VII retaliation claim.

To prevail on her retaliation claim, Laughlin must satisfy the three-step proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). First, Laughlin must establish, by a pre-

6

ponderance of the evidence, a prima facie case of retaliation. Once established, the burden shifts to the MWAA to rebut the presumption of retaliation by articulating a non-retaliatory reason for its action. See Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985); cf. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the MWAA meets its burden of production, the presumption of discrimination created by the prima facie case is rebutted and "drops from the case," Burdine, 450 U.S. at 255 n.10, and Laughlin bears the ultimate burden of proving that she has been the victim of retaliation, see St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-11 (1993).

On appeal, Laughlin contends that she forecasted sufficient evidence to establish a prima facie case of retaliation under Title VII and that the district court erred when it granted summary judgment to the MWAA. To establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action. See Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir.), cert. denied, 117 S. Ct. 70 (1996). It is undisputed that Laughlin suffered an adverse employment action and therefore satisfies the second requirement of the prima facie case: She was terminated. See Hartsell v. Duplex Products, Inc., 123 F.3d 766, 775 (4th Cir. 1997) (noting that termination is an adverse employment action). Moreover, it is undisputed that Laughlin was terminated as a result of removing the documents in question. To survive summary judgment, therefore, Laughlin must have evidence that removing the documents was a protected activity.

Laughlin asserts that she engaged in a protected activity when she removed and copied the documents from her boss's desk and mailed them to LaSauce because she was assisting in an investigation of LaSauce's discrimination claim. Because the parties have not characterized Laughlin's acts as theft, but rather merely as a breach of trust,[3]

_____

[3] The district court noted that the MWAA had not characterized Laughlin's actions as theft and, as a result, found it unnecessary to determine whether the removal of documents constituted illegal activity. We

7

we must determine whether Laughlin's removal of documents is protected activity. Protected activities fall into two distinct categories: participation or opposition. See 42 U.S.C.A.§ 2000e-3(a) (West 1994). An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace. See id.

Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C.A. § 2000e-3(a). Participatory activities are vigorously protected to ensure employees' continuing access to the EEOC and the enforcement process. See Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir. 1990) ("The purpose of section 2000e-3's participation clause is to protect the employee who utilizes the tools provided by Congress to protect his rights." (internal quotation marks omitted)).

Laughlin urges us to conclude that the district court erred when it did not characterize her removal of documents as participation in LaSauce's EEO claim. She argues that her actions were taken to assist LaSauce in her investigation. The evidence, however, does not support Laughlin's assertion. First, at the time the documents were

_____

recognize, however, that such activity could be considered theft. See O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 761 (9th Cir. 1996) (describing similar activity as "stealing").

It is black letter law that illegal actions are not protected activity under Title VII. See McDonnell Douglas Corp. v. Green , 411 U.S. 792, 803-04 (1973); Mozee v. Jeffboat, Inc., 746 F.2d 365, 374 (7th Cir. 1984); Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir. 1978); see also R. Bales, A New Standard for Title VII Opposition Cases: Fitting the Personnel Manager Double Standard into a Cognizable Framework, 35 S. Tex. L. Rev. 95, 107 (1994) (stating that every court to address the issue has held that illegal acts are not protected under Title VII). Title VII simply does not condone illegal activity, even in furtherance of its laudable goals of preventing workplace discrimination.

8

removed from the desk, LaSauce was not involved in any ongoing investigation under Title VII. LaSauce had recently resigned from her position at the MWAA and had not yet filed suit. Second, LaSauce herself testified that she had not requested Laughlin's assistance and that she was surprised to receive the documents in the mail. There was quite simply no ongoing "investigation, proceeding or hearing" in which Laughlin could participate at the time she discovered the documents on her boss's desk. On that basis, we disagree with Laughlin's contention that her case should have been analyzed under the participation clause.**4**

Because Laughlin's actions are not cognizable as participation, they must be oppositional or her case fails as a matter of law. To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. See Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities. See id. To determine whether an employee has engaged in legitimate opposition activity we employ a balancing test. See id. We "`balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'" Id. (quoting Hochstadt v. Worcester Found. for Experimental Biology, 545 F.2d 222, 231 (1st Cir. 1976)).

The district court initially did not use this test, but rather determined that the circumstances of this case, in which an employee com-

_____

**4** The distinction between participation clause protection and opposition clause protection is significant because the scope of protection is different. Activities under the participation clause are essential to "`the machinery set up by Title VII.'" Hashimoto v. Dalton, 118 F.3d 671, 680 (9th Cir. 1997) (quoting Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir. 1978)), cert. denied, 1998 WL 245048 (U.S. May 18, 1998) (No. 97-1644). As such, the scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause. See Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989).

mitted an egregious breach of confidentiality, mandated a rebuttable presumption that the activity was not protected under Title VII. Laughlin asserts that the district court erred by analyzing her case utilizing this rebuttable presumption that activity that constitutes a "breach of the employee's obligations of honest and faithful service" is not protected under the opposition clause. (J.A. at 170.) We believe that this Circuit's well-established balancing test provides an adequate, workable framework for assessing opposition clause claims and, thus, decline to adopt the district court's rationale. Setting aside the fact that the balancing test already accounts for the concerns expressed by the district court regarding the plaintiff's culpability in this matter, we are bound by the precedent established by another panel of this court. See Industrial Turnaround Corp. v. NLRB, 115 F.3d 248, 254 (4th Cir. 1997) (stating that one panel may not overrule another). That determination, however, does not require reversal. The district court applied the balancing test as an alternative analysis and determined that Laughlin's claim failed as a matter of law.

When we apply the balancing test to the facts of this case, we easily conclude that the employer's interest in maintaining security and confidentiality of sensitive personnel documents outweighs Laughlin's interest in providing those documents to LaSauce. Laughlin's reaction to the situation was disproportionate and unreasonable under the circumstances. This court has recognized that complaining to the employer, see Hopkins v. Baltimore Gas & Elec., Co., 77 F.3d 745, 754 (1996); Armstrong, 647 F.2d at 448, and participating in an employer's informal grievance procedures, see Armstrong, 647 F.2d at 448, when done in a manner that is "not disruptive or disorderly," id., constitute opposition activities that merit protection under Title VII. Laughlin's drastic actions are not akin to the measured responses to employer discrimination that we have approved in the past.

In contrast, the MWAA's decision to terminate Laughlin was sound. The MWAA had a reasonable and significant interest in preventing the dissemination of confidential personnel documents. See Jefferies v. Harris County Community Action Ass'n , 615 F.2d 1025, 1036-37 (5th Cir. 1980) ("[Employer] clearly had a legitimate and substantial interest in keeping its personnel records and agency documents confidential."). Laughlin had breached her employer's trust by

10

copying confidential material and sending it to an outside party. Title VII was "not intended to immunize insubordinate, disruptive, or non-productive behavior at work." Armstrong, 647 F.2d at 448. Because the MWAA's strong interest in protecting sensitive records outweighs Laughlin's interest in this instance, the district court was correct in holding that Laughlin, as a matter of law, did not engage in protected oppositional activity and, therefore, did not establish a prima facie case of retaliatory discharge.

IV.

Laughlin further asserts that procedural irregularities below mandate reversal. For the reasons that follow, we disagree.

Laughlin contends that the district court abused its discretion when it converted the MWAA's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure into a motion for summary judgment under Rule 56. Laughlin argues that she did not have adequate notice that the motion was to be converted and that, as a result, she was deprived of the discovery necessary to prove her case.

There are several problems with Laughlin's argument. First, the MWAA's responsive pleading was captioned, "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment." (J.A. at 22.) Based upon the caption alone, Laughlin was on notice that this motion might be treated as one for summary judgment. Setting aside the caption for a moment, we note that the MWAA submitted affidavits and other materials with its motion. When "matters outside the pleading are presented to and not excluded by the court, the[12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). Therefore, by operation of the Federal Rules of Civil Procedure, Laughlin also should have been on notice that the MWAA's motion could be considered by the court to be a summary judgment motion. Further, Laughlin submitted a "Memorandum in Opposition to Defendants' Motion to Dismiss, or, in the alternative, for Summary Judgment" to which she attached supporting affidavits. On the basis of her own actions-- captioning her memorandum and filing affidavits -- it appears that Laughlin had actual notice that the motion could be disposed of as one for summary judgment.

11

Laughlin asserts that, in the face of all of these indicia that the motion could be treated as one for summary judgment, the district court nevertheless had an obligation to formally notify her prior to the hearing that the motion was definitely going to be treated as one for summary judgment so she could obtain adequate discovery.

Laughlin's argument is without merit. A cursory glance at the Federal Rules of Civil Procedure, as well as Laughlin's own filings, make clear that the motion before the court could be treated as a motion for summary judgment. The district court, while it clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, does not have an obligation to notify parties of the obvious. Cf. Newton v. A.C. & S., Inc., 918 F.2d 1121, 1128 (3d Cir. 1990) (noting that a court must provide reasonable notice and an opportunity to be heard before imposing a fine); Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973) (requiring reasonable notice when cases are consolidated for trial). An advocate has a responsibility to do the necessary research regarding the procedural law of the forum in which he litigates as part of the duty he owes his client. Cf. United States v. Vargas, 585 F.2d 546, 547 (1st Cir. 1978) (stating that it was the "responsibility of counsel to keep abreast of the law and to inform the court of the correct state of the law").

Because appropriate notice was ample, Laughlin's attorney had the responsibility, if he thought further discovery was necessary to adequately oppose summary judgment, to make a motion under Rule 56(f). That rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). Counsel failed to make such a motion. Cf. Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (noting that the appellate court will not overturn a district court's grant of sum-

mary judgment on bald assertions of inadequate discovery when the party did not make an appropriate motion under Rule 56(f)).

As a result of the extensive notice to the parties that the MWAA's responsive motion could be treated as one for summary judgment, the district court did not abuse its discretion when it did not send formal notice to the parties that it planned to construe the motion as one for summary judgment.

V.

Because we determine that summary judgment on Laughlin's Title VII retaliation claim was appropriate, and that the district court did not abuse its discretion when it treated the MWAA's "Motion to Dismiss, or, in the alternative, for Summary Judgment," which was accompanied by affidavits submitted by both parties, as a motion for summary judgment, we affirm.

AFFIRMED

13