**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1734**

WILLIAM HARDEN,

              Plaintiff – Appellant,

      v.

WICOMICO COUNTY, MARYLAND; DOUGLAS C. DEVENYNS,

              Defendants – Appellees,

      v.

JACK KAVANAGH, Director,

              Movant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William M. Nickerson, Senior District
Judge.  (1:09-cv-01123-WMN)

Argued:  May 10, 2011                 Decided:  June 23, 2011

Before WILKINSON and SHEDD, Circuit Judges, and David C. NORTON,
Chief United States District Judge for the District of South
Carolina, sitting by designation.

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion,
in which Judge Wilkinson and Judge Norton joined.

**ARGUED:** Robin Ringgold Cockey, COCKEY, BRENNAN & MALONEY, PC,
Salisbury, Maryland, for Appellant.  Kevin Bock Karpinski,
KARPINSKI, COLARESI & KARP, PA, Baltimore, Maryland, for

Appellees.  **ON BRIEF:** Ashley A. Bosché, COCKEY, BRENNAN & MALONEY, PC, Salisbury, Maryland, for Appellant.  Victoria M. Shearer, KARPINSKI, COLARESI & KARP, PA, Baltimore, Maryland, for Appellees.

——————————

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

William Harden appeals the district court's order granting summary judgment in favor of his employer, Wicomico County, Maryland ("the County"). For the reasons set forth below, we affirm.

I.

We view the evidence in the light most favorable to Harden, the non-moving party. Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006) (en banc). Harden was the Internal Affairs Investigator at the Wicomico County Detention Center ("WCDC"). In this position, he performed background checks on potential employees, screened inmate grievances, performed drug and gang investigations, and investigated security threats. In March of 2007, Reverend Parrot, the father of a WCDC inmate, told Harden that the WCDC's Director, Douglas Devenyns, was "sleeping with his staff."

Based upon this information, Harden interviewed several WCDC staff members and then approached County Executive Richard Pollitt regarding Devenyns' alleged sexual harassment of Jean Murry, a former nurse for a WCDC medical vendor. At Pollitt's direction, Harden conducted an investigation into the alleged sexual harassment and wrote a confidential report dated April 4, 2007 ("the Report"). After reading the Report, Pollitt found

3

nothing improper in Devenyns' actions. On March 6, 2008, Pollitt formally instructed Harden to cease his investigation of Devenyns.

From May 2008 through July 2008, Harden engaged in a series of actions that eventually led to his termination. He posted information from the Report on his internet blog and mailed a copy of the Report to a member of County Council. He also failed to attend a training workshop, sent an insubordinate email to the police, broke into Devenyns' secretary's desk, and refused to cooperate with, or follow the instructions of, the Chief of Security, who was his supervisor. In addition, in June 2008, Harden filed an EEOC complaint against both Devenyns and the WCDC's Deputy Director.

On August 12, 2008, the WCDC fired Harden for insubordination, failure to obey lawful orders, unauthorized disclosure of confidential information, unauthorized use of or damage to County property, and making malicious or irresponsible statements to other officials. Harden appealed his termination. While Harden's appeal was pending, the WCDC abolished the position of Internal Affairs Investigator because of budget cuts. In February 2009, following the hearing, the Wicomico County Personnel Board reinstated Harden because it believed progressive, corrective discipline might have prevented Harden from committing the violations for which he was terminated.

4

Harden returned to work at the WCDC in March 2009 as a Support Services Coordinator in charge of inmate grievances. Although Harden's pay and leave remained the same, he had fewer supervisory powers and was reinstated as a Grade 18 employee rather than a Grade 20 employee on the County's employment scale.

In response to the terms of his reinstatement, Harden brought this case alleging causes of action for retaliation in violation of 42 U.S.C. § 2000e-3(a) as well as interference with his First Amendment rights to petition the government and freedom of speech. The district court entered summary judgment in favor of Wicomico County on all three counts after concluding that Harden failed to establish a prima facie case for retaliation and failed to establish sufficient evidence of a violation of his First Amendment rights.[1]

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

---

[1] The district court held that, as a matter of law, Harden did not have a cause of action for violation of his First Amendment right to freedom of speech because Harden did not engage in speech protected by the First Amendment. Harden did not address this issue in his appellate briefs. Therefore, Harden has abandoned that claim on appeal. See Tucker v. Waddell, 83 F.3d 688, 690 (4th Cir. 1996).

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  See also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (finding summary judgment appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]").  We review the district court's order granting summary judgment de novo. Jennings v. Univ. of N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en banc).

Harden argues that the district court erred in holding that he failed to establish a prima facie case for retaliation pursuant to 42 U.S.C.A. § 2000e-3(a).  To establish a prima facie case for retaliation, Harden must prove: "(1) that [he] engaged in protected activity, (2) that an adverse employment action was taken against [him], and (3) that there was a causal link between the protected activity and the adverse employment action."  Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998).  The first element of a prima facie case encompasses two distinct categories of protected activities:  participation by a complainant in a Title VII proceeding, and engaging in oppositional activities to bring attention to an employer's discriminatory activities.  Harden alleges that the County retaliated against him for engaging in both types of activity, but we agree with the district court

that Harden fails to establish a prima facie case for retaliation under either category.

A.

First, Harden alleges that he participated in a protected activity. "Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." Laughlin, 149 F.3d at 259. Pursuant to this statutory definition, Harden established the first element of a prima facie case — that he participated in a protected activity by filing his June 2008 EEOC complaint.

Harden has also produced sufficient facts to establish the second prong of a prima facie case, that he suffered a materially adverse action. "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)(internal citation marks omitted). When Harden returned to work after suspension without pay, he was not reinstated as the Internal Affairs Investigator. Although he continued to receive the same salary and leave time, he had fewer supervisory powers and became a Grade 18 employee

rather than a Grade 20 employee.  The Supreme Court has found that reassignment to a less desirable job after a period of suspension without pay can amount to material harm.  Id. at 70-71.

However, Harden failed to satisfy the third prong of the prima facie analysis -- he did not provide evidence of a causal link between his filing of the EEOC complaint and his reinstatement to a less desirable job.[2]  Harden was not reassigned to his prior position after his termination was reversed because the position of Internal Affairs Investigator had been abolished for budgetary reasons during Harden's suspension.  Thus, Harden was placed in a less desirable position because his former position no longer existed, not because of retaliation.  Harden has simply failed to offer evidence sufficient to show the needed causal connection.

---

[2] Because Harden filed his EEOC complaint anonymously, the district court held that Harden failed to demonstrate a causal link between the filing and Harden's treatment.  However, because there is evidence that some people at WCDC discovered that Harden had filed the complaint, we affirm the district court on the basis of its alternative finding -- that Harden's prior position of Internal Affairs Investigator no longer existed.  See Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir. 1993) ("In reviewing the grant of summary judgment, we can affirm on any legal ground supported by the record and are not limited to the grounds relied on by the district court.").

Second, Harden alleges that he engaged in oppositional activity intended to bring attention to what he believed to be Devenyns' sexual harassment of female employees when he mailed a copy of the Report to a member of County Council and posted information from the Report on his online blog. "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin, 149 F.3d at 259 (internal citations omitted). We use a balancing test to determine whether an employee has engaged in protected oppositional activity. We "balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." Id. (internal citation marks omitted).

Thus, in Laughlin, we found that an employee did not engage in protected oppositional activity when she removed sensitive personnel documents relating to another employee from her supervisor's desk. We explained:

> When we apply the balancing test to the facts of this case, we easily conclude that the employer's interest in maintaining security and confidentiality of sensitive personnel documents outweighs Laughlin's interests in providing those documents to LaSauce [the other employee]. Laughlin's reaction to the situation was disproportionate and unreasonable under the circumstances. . . . The MWAA [the employer] had a reasonable and significant interest in preventing the dissemination of confidential personnel documents. . . . Title VII was not intended to immunize insubordinate, disruptive, or nonproductive behavior at work.

Laughlin, 149 F.3d at 260 (internal citations omitted).

As in Laughlin, we find that the County's interest in protecting confidential, sensitive records outweighs Harden's interest in exposing Devenyns' alleged sexual harassment. Therefore, Harden did not engage in protected oppositional activity, and he cannot establish a prima facie case of retaliatory discharge for sending the Report to the member of County Council or posting information from the Report online.[3]

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the County.

AFFIRMED

---

[3] Harden also argues that the retaliation against him interfered with his right to petition the government. However, because there was no improper retaliation against Harden, this claim also fails.