**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-2432

AMY D. FRANCISCO,

             Plaintiff - Appellant,

     v.

VERIZON SOUTH, INC.,

             Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia at Richmond.  Dennis W. Dohnal, U.S.
Magistrate Judge.  (3:09-cv-00737-DWD)

Submitted:  June 23, 2011          Decided:  August 8, 2011

Before GREGORY, DUNCAN, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Jay J. Levit, LAW OFFICE OF JAY J. LEVIT, Glen Allen, Virginia,
Tim Schulte, SHELLEY & SCHULTE, PC, Richmond, Virginia, for
Appellant.  Raymond A. Cardozo, REED SMITH, LLP, San Francisco,
California, Helenanne Connolly, REED SMITH, LLP, Falls Church
Virginia, Betty S. W. Graumlich, REED SMITH, LLP, Richmond,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Amy D. Francisco appeals from the district court's grant of summary judgment in favor of Verizon South, Inc. The district court held that Francisco had failed to establish a prima facie case of retaliation to support her claim under Title VII. We affirm.

I.

When reviewing a grant of summary judgment, as here, we construe the facts in the light most favorable to the nonmoving party. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). Francisco, who is African American, worked for Verizon and its predecessor from 1988 until her termination on March 6, 2008. At all times relevant to this dispute, Debra Nuckles supervised Francisco. As part of her workplace duties, Francisco attended a conference on October 24, 2007. During the conference, Don Albert, a director at Verizon, gave a presentation touting the company's accomplishments. He asked for a volunteer in the crowd to step on stage and display cue cards to the audience at appropriate times. Specifically, the volunteer was to display cards with words like "cheer" or "clap" as Albert listed the successes of the company. Albert had re-used cards from a previous presentation. On one side of each card was a command to cheer, and on the other an image from

2

The Phantom of the Opera that he had displayed at the previous engagement. During the presentation, the volunteer dropped a card and accidentally displayed the wrong side to the audience. That side displayed a noose, an image used in The Phantom of the Opera.

Francisco alleges that she "reasonably perceived this noose and its display as a racist act of intimidation and hostility." J.A. 41. Although she was outraged by the incident, she failed to notify Verizon of her complaint until roughly three months later.

In December 2007, well before Francisco filed her complaint, Albert was directed to identify a Verizon employee for a reduction in force ("RIF")--i.e., a layoff. Albert is responsible for making "initial recommendations of the force reductions" needed to compensate for the company's decreased business in the wireline department. Id. 326. That same month, Albert determined that Francisco would be laid off. As Albert explained, he first concluded that someone under the supervision of Nuckles would be terminated, because Nuckles's team comprised an excessive number of employees. This left five candidates for termination. Identification of Francisco as the individual to be laid off was simple, reasoned Albert, because her performance was rated the lowest out of the group.

3

Albert maintained ultimate authority for determining which employee was to be terminated. He consulted only with Nuckles, during the first or second week of January 2008, and solicited her input about his proposed decision to terminate Francisco's employment. He formally recommended Francisco for a RIF on February 4, 2008. The human resources and legal departments approved the recommendation on February 28, and Francisco was notified of the decision on March 6. Neither Albert nor Nuckles--the only employees vested with a role in the decision-making process--learned of Francisco's cue-card complaint until after their respective roles in the RIF process had concluded. Albert learned of the complaint on March 11, 2008, and Nuckles was so apprised on January 24, 2008.

At the same time that her termination was being finalized, Francisco decided to voice her complaint about the cue-card incident. She first raised the issue during a January 24, 2008 meeting with Louise Shutler and Faye Harrison, members of the Verizon Security team. The meeting was arranged to investigate Francisco's three-day unexcused absence from work the preceding week. Francisco took that opportunity to explain the cue-card incident to Shutler and Harrison, but Shutler informed her that Verizon Security had no jurisdiction over the matter. Instead, Shutler promised to forward the complaint to the company's ethics office.

4

Hearing no further word about her complaint, Francisco on February 7 contacted Shutler. Shutler acknowledged that she had forgotten to forward the complaint and had not spoken with a single person about the issue. She promised to take action immediately and ultimately transmitted the complaint to Kenna Ashley, who talked with Francisco on February 13. No further action was taken on the complaint, and Francisco was notified of her termination on March 6.

After learning of her termination, Francisco filed suit, alleging unlawful retaliation in violation of Title VII. In her complaint, Francisco asserted that she was "terminated from employment with Verizon in retaliation for complaining about incidents at work of race discrimination and racial intimidation." J.A. 37.

After extensive discovery, Verizon moved for summary judgment. The district court granted the motion, dismissing Francisco's retaliation claim. From this order Francisco now appeals.

II.

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate "against a party

5

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To resist summary judgment, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and the party "cannot defeat summary judgment with merely a scintilla of evidence," Am. Arms Int'l v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009).

We review de novo a district court's granting of summary judgment, viewing the facts in the light most favorable to the nonmoving party. Laughlin, 149 F.3d at 258.

III.

Title VII's retaliation provision forbids "an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). We have endorsed a familiar three-step framework when assessing Title VII retaliation claims. Laughlin, 149 F.3d at 258. First, the plaintiff must show, by a preponderance of the evidence, a prima facie case of retaliation. Id. The burden then shifts to the defendant "to rebut the presumption of retaliation by articulating a non-

6

retaliatory reason for its action." Id. If the defendant successfully rebuts, the presumption of retaliation "drops from the case" and the plaintiff bears the ultimate burden. Id. (internal quotation marks omitted).

To establish the necessary prima facie case of retaliation, a plaintiff must demonstrate "(1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." Id. Because we conclude that Francisco has failed to satisfy the causation prong, we need not assess the remaining two elements.

To demonstrate the requisite "causal link between the protected activity and the adverse employment action," id., a plaintiff must generally show at the very least that the termination occurred after the decision-making authority became aware of the employee's grievance, see Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The undisputed facts show that Francisco fails to meet this most basic element of the causation prong.

Only two individuals at Verizon exercised direct control over Francisco's termination--Albert and Nuckles. The undisputed facts show that Albert did not learn of Francisco's complaint until March 11, 2008, five days after Francisco was notified that she would be laid off. Nuckles completed her

7

involvement in Francisco's termination by giving input to Albert in the first or second week of January 2008. This was at least a week before she learned of Francisco's complaint on January 24.[*] Although the human resources and legal departments also had a role--albeit a most formal role--in approving Francisco's termination, Francisco does not allege that any individuals in those departments knew of her complaint.

Thus, short of innuendo and conclusory allegations of a vast conspiracy, Francisco is unable to present more than a "scintilla of evidence" that any of the decision makers knew of her complaint prior to her official termination. Her claim inexorably fails, and summary judgment is appropriate. We therefore affirm the judgment of the district court.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials

---

[*]Verizon disputes this date, contending that Nuckles did not learn of Francisco's complaint until November 2008. In support of the earlier date, Francisco points to Shutler's deposition wherein she testified that Nuckles talked to her about Francisco's complaint on January 24, 2008. Shutler, however, almost immediately corrected herself, testifying that she meant to identify Francisco as the person who informed her about the complaint. We think it obvious from the context of Shutler's testimony and her clarifying remarks that Shutler misspoke, but we nevertheless follow the district court's lead in assuming that Nuckles learned of the complaint on January 24.

before the court and argument would not aid the decisional process.

AFFIRMED