UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1689

LORENZO JOHNSON, JR.,

Plaintiff − Appellant,

v.

OLD DOMINION UNIVERSITY; JOHN R. BRODERICK, President, in his individual capacity; CAROL SIMPSON, Professor (Former Provost), in both her official and individual capacities,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Arenda L. Wright Allen, District Judge. (2:16-cv-00242-AWA-LRL)

Argued: January 28, 2020                    Decided: May 14, 2020

Before DIAZ, THACKER, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Hannah Rogers Metcalfe, METCALFE & ATKINSON, LLC, Greenville, South Carolina, for Appellant. William Ryan Waddell, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Mark R. Herring, Attorney General, Samuel T. Towell, Deputy Attorney General, Gregory C. Fleming, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lorenzo Johnson, Jr., a former Information Technology Specialist at Old Dominion University ("ODU"), filed numerous grievances and document requests while employed at ODU, alleging, among other things, racial discrimination by his supervisor. Citing Johnson's frequent use of the grievance process, repetitive document requests, and impaired communication skills, ODU required Johnson to undergo a Fitness for Duty evaluation. After Johnson repeatedly failed to attend the required evaluation, ODU terminated his employment. Johnson then brought this suit, alleging, as relevant here, that ODU violated the Americans with Disabilities Act ("ADA") by requiring him to undergo the Fitness for Duty evaluation and that ODU violated Title VII of the Civil Rights Act of 1964 ("Title VII") by terminating him in retaliation for filing grievances and document requests. The district court granted summary judgment in ODU's favor. We agree with the district court and affirm its decision.

The district court provided a thorough statement of the facts, *see Johnson v. Old Dominion Univ.*, No. 2:16cv242, dismissal order at 2–16 (E.D. Va. May 21, 2018), which we summarize here in the light most favorable to Johnson, *see EEOC v. McLeod Health, Inc.*, 914 F.3d 876, 880 (4th Cir. 2019).

As an Information Technology Specialist, Johnson was responsible for, among other things, providing technical support for ODU faculty and staff. According to the position description, an Information Technology Specialist must have the "[a]bility to communicate clearly and effectively to provide excellent customer service support with a 'can-do attitude' to the Faculty, Staff, and students within the College of Business." J.A. 314.

3

In November 2011, Johnson received an annual performance evaluation that rated him as "Below Contributor" in "Customer Relations," the area in which his "[a]bility to communicate clearly and effectively" was evaluated. J.A. 336. In addition, under "Professional Development Goals," the evaluation listed, "Communicate more effectively with faculty/students/staff . . . [Johnson] communicates well with [his supervisor] and some faculty, but not all." J.A. 336.

In Johnson's 2012 performance evaluation, he was rated as "Contributor" in "Customer Relations." J.A. 345. However, the evaluation still identified his communication skills as an area that needed improvement. Under "Professional Development Goals," the evaluation listed, "Communicate more effectively with faculty/students/staff." *Id.* The same was true for Johnson's 2013 performance evaluation.

In the fall of 2011, Johnson's supervisor, Dr. Alireza Ardalan, requested that Johnson and the other Information Technology Specialist whom Ardalan supervised, John Barker, provide him daily reports noting their arrival times, what they did during the day, and their departure times.

In September 2013, Johnson filed a grievance claiming that he was the only Information Technology Specialist who had to send Ardalan daily reports. Ardalan responded that he required both Johnson and Barker to submit the reports. Johnson sought review of Ardalan's response, and, at each step of the review process, Johnson's grievance was deemed meritless because both Johnson and Barker were required to submit the daily reports. At the conclusion of the review process, Johnson requested a hearing on the grievance, which was granted.

4

In connection with the grievance, Johnson submitted a document request to ODU's Employee Relations Manager, Kathy Williamson. Johnson sought copies of all daily reports and related communications submitted to Ardalan by his subordinates, excluding Johnson, from October 2011 to September 2013. Williamson responded that she couldn't provide the documents due to privacy concerns. Johnson then sought a compliance ruling from ODU's Office of Employment Dispute Resolution regarding the document request. That office affirmed Williamson's decision.

From October 2013 to February 2014, Johnson filed three more grievances and six more document requests. The grievances stemmed from the denial of his first document request, Ardalan's failure to discipline him after he refused to submit his daily reports in an act of "civil disobedience," J.A. 438, and alleged retaliation for filing grievances.[1] In the document requests, Johnson continued to seek copies of the daily reports, though from shortened time frames. In some of the requests, Johnson only sought copies of the metadata from the daily reports. The grievances were closed, and the document requests were denied.

On February 11, 2014, Johnson filed a race discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). Johnson, who is African American, alleged that he was required to submit the daily reports, but Barker, who is white, was not.

---

[1] Johnson wanted Ardalan to discipline him so he could "have the opportunity to present [his] case" regarding the daily reports. J.A. 438. He alleged that Ardalan and an ODU professor retaliated against him for filing grievances by "withh[olding] software requirements until the 11th hour with the intent to harass [him], creat[ing] crises, and then disparag[ing] [his] work." J.A. 446.

Shortly thereafter, Johnson filed a petition for a writ of mandamus in the Norfolk General District Court, seeking to compel production of the daily reports. The court denied Johnson's petition. Within hours of the court's ruling, Johnson submitted another document request.

In the lead-up to the hearing on Johnson's September 2013 grievance, ODU produced some of the requested documents. The documents showed that Barker had sent Ardalan an email at the end of the day noting his arrival time, what he did that day, and his departure time. Johnson questioned the authenticity of the documents and demanded copies of their metadata. The day before the hearing, Johnson withdrew the grievance.

Ardalan grew concerned about Johnson's behavior. According to Ardalan, "[t]he more Mr. Johnson filed grievances the less he was able to communicate with [Ardalan] and other ODU faculty and staff." J.A. 316. Johnson's "communication became so strained that [Ardalan] was often called upon to act as an intermediary between him and other faculty members." *Id.* Johnson also "became increasingly divisive and combative and challenged anything that was said or done concerning his work or behavior." *Id.* "As [Johnson's] actions became more strident," Ardalan worried that Johnson might physically harm him. *Id.* Other faculty and staff members were also concerned about Johnson's "adversarial and irrational behavior." J.A. 404. Ardalan reported his concerns about Johnson to the ODU Threat Assessment Team, which concluded that Johnson didn't pose an imminent threat because he was taking advantage of the grievance system.

ODU determined that Johnson should undergo a Fitness for Duty evaluation. In the evaluation referral form, Williams explained that Johnson was being referred because of

6

the number of grievances and document requests he had filed, his communication issues with faculty and staff members, and concern for his "mental health and ability to exercise sound judgment at work." J.A. 452.

On April 17, 2014, Carol Simpson, ODU's former Provost, sent Johnson a memorandum advising him that he was being placed on paid administrative leave pending the outcome of the mandatory Fitness for Duty evaluation. In the memorandum, Simpson stated:

> This action is being initiated by the University based on your recent behavior, as evidenced by repeated demands for the same information as part of multiple grievances . . . without any indication that these requests will cease or lead to a resolution. These repeated requests for the same information amount to misuse of the University's grievance system. Additional concerns include your filing of a FOIA request 90 minutes after a judge had denied you the materials in an identical request, and your inability to work with others or to interact in a constructive way with supervisors.

J.A. 459.

On three occasions, Johnson failed to attend his scheduled Fitness for Duty evaluation. On May 28, 2014, ODU issued a written notice of discipline to Johnson stating that his failure to attend the evaluation violated ODU policy. ODU scheduled another evaluation, which Johnson again failed to attend. On July 14, 2014, ODU issued a second written notice of discipline. That notice informed Johnson that his employment was terminated.

In February 2015, Johnson filed another charge with the EEOC, alleging that ODU violated the ADA by requiring him to undergo a Fitness for Duty evaluation. The EEOC issued right-to-sue notices for both of Johnson's charges.

7

Thereafter, Johnson filed a complaint against ODU, ODU President John Broderick, and former ODU Provost Simpson (collectively, "ODU"). Johnson alleges, as relevant here, that ODU violated the ADA by requiring him to undergo a Fitness for Duty evaluation and that ODU violated Title VII by terminating him in retaliation for filing grievances, document requests, the state court action, and the first EEOC charge. ODU moved for summary judgment, and in a well-reasoned opinion, the district court granted ODU's motion.

The district court first considered Johnson's ADA claim. The ADA provides that "[a] covered entity shall not require a medical examination . . . unless such examination . . . is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). EEOC regulations explain that an examination is job-related and consistent with business necessity if the employer "has a reasonable belief, based on objective evidence," that "an employee's ability to perform essential job functions will be impaired by a medical condition." EEOC, ENFORCEMENT GUIDANCE: DISABILITY-RELATED INQUIRIES AND MEDICAL EXAMINATIONS OF EMPLOYEES UNDER THE AMERICANS WITH DISABILITIES ACT (ADA) (July 27, 2000), 2000 WL 33407181, at *6.

ODU contends that communication was an essential function of Johnson's job and that it reasonably believed, based on objective evidence, that Johnson's ability to communicate effectively was impaired. Johnson disputes both points, arguing that ODU's alleged concerns regarding his communication skills were pretext for retaliating against him for filing grievances. In support, Johnson points to the improved ratings in his

8

performance evaluations and ODU's express statement in the Fitness for Duty evaluation referral form that it was referring Johnson because of the number of grievances and document requests he had filed.

The district court agreed with ODU, citing Johnson's job description, which calls for the "[a]bility to communicate clearly and effectively to provide excellent customer service," J.A. 314, in support of its conclusion that effective communication was an essential function of Johnson's job. *See Johnson v. Old Dominion Univ.*, dismissal order at 22. The district court also found "ample evidence" to establish that Johnson's ability to communicate was impaired. *Id.* The district court noted that Ardalan was often called upon to act as an intermediary between Johnson and other faculty members, Johnson refused to communicate with certain faculty members, and ODU faculty and staff were concerned about Johnson's adversarial and irrational behavior. *Id.*

As to Johnson's argument that ODU's concerns were pretextual, the district court explained that in deciding to require the Fitness for Duty evaluation, ODU considered Johnson's behavior, including his "repeated requests for the same information" and "misuse of the University's grievance system," along with his "inability to establish effective communication." *Id.* at 23 (cleaned up). Rather than presenting "shifting justifications," ODU's considerations were "neither mutually exclusive nor internally inconsistent." *Id.* Accordingly, the district court concluded that Johnson hadn't demonstrated a genuine dispute of material fact as to ODU's reasonable belief, based on objective evidence, that Johnson's ability to communicate effectively was impaired, and thus that ODU was entitled to summary judgment on Johnson's ADA claim.

9

The district court next considered Johnson's Title VII claim. Title VII prohibits an employer from retaliating against an employee for opposing prior discrimination. *See* 42 U.S.C. § 2000e-3(a). Opposition activity includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Employees may prove that their employer retaliated against them for engaging in opposition activity through one of two ways: by direct evidence of retaliatory animus, or through the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

Concluding that Johnson hadn't produced direct evidence of retaliatory animus, the district court considered whether Johnson could prevail under the *McDonnell Douglas* framework.[2] The *McDonnell Douglas* framework proceeds in three steps. *Foster*, 787 F.3d at 250. First, employees must establish a prima facie case of retaliation. *Id.* They do

---

[2] We agree that Johnson can't proceed under the direct-evidence route. Johnson argues that there is direct evidence of retaliatory animus in ODU's statements that it was requiring the Fitness for Duty evaluation because of the number of grievances and document requests Johnson had filed. But an employee proceeding under the direct-evidence route must still show that the opposition activity was the but-for cause of the retaliatory act. *See id.* Here, ODU provided reasons in addition to Johnson's grievances for requiring the evaluation. The memorandum notifying Johnson of the evaluation also references his "inability to work with others or to interact in a constructive way with supervisors." J.A. 459. The evaluation referral form states that Johnson "has been cited for the difficult communication throughout his employment between himself and the faculty members whose instructional labs he services." J.A. 452. Thus, Johnson's proffered direct evidence of retaliatory animus doesn't alone show that his filing of grievances and document requests was the but-for cause of the alleged retaliation.

so by showing that they engaged in protected activity, their employer took adverse action against them, and a causal relationship exists between the protected activity and the adverse action. *Id.* at 252. If the employee establishes a prima facie case, "[t]he burden then shifts to the [employer] to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id.* at 250. If the employer makes this showing, the burden shifts back to the employee to show that the employer's non-retaliatory reasons "were not its true reasons, but were a pretext for discrimination." *Id.* (cleaned up).

ODU argues that even if Johnson can establish a prima facie case of retaliation, it has shown that its purported retaliatory actions—requiring the Fitness for Duty evaluation and terminating Johnson's employment—are supported by legitimate, non-retaliatory reasons. ODU asserts that it required Johnson to undergo a Fitness for Duty evaluation because of his impaired communication skills, and it terminated Johnson because he had accumulated two written notices of discipline for failing to attend the required evaluation. ODU also argues that Johnson can't show that these reasons were pretextual.

In response, Johnson again argues that ODU's concerns regarding his communication skills were pretextual and that ODU terminated him for filing grievances, document requests, a state court action, and an EEOC charge.

The district court assumed, *arguendo*, that Johnson could establish a prima facie case of retaliation, but it concluded that Johnson failed to demonstrate a genuine dispute of material fact as to the remaining elements of his retaliation claim. *Johnson v. Old Dominion Univ.*, dismissal order at 25–26. It explained that ODU had "articulated

11

legitimate, non-discriminatory explanations for the actions about which [Johnson] complains" and that "ODU's explanations are supported by ample evidence." *Id.* at 26.

In support, the district court cited Ardalan's statements regarding Johnson's difficulties communicating effectively, the faculty and staff's concerns regarding Johnson's behavior, and Johnson's repeated failures to attend the evaluations. *Id.* at 25–26. The district court also concluded that Johnson failed to produce evidence contradicting ODU's legitimate, non-retaliatory reasons for the evaluation and his termination, and that his "suspicions of ill intent are insufficient to create a genuine issue of material fact regarding pretext." *Id.* at 26. Thus, the district court held that ODU was entitled to summary judgment on Johnson's Title VII claim.

Johnson appealed, making substantially the same arguments he made in the district court. We review a district court's grant of summary judgment de novo. *McLeod Health*, 914 F.3d at 880. We have carefully considered the controlling law and the parties' arguments, and we agree with the reasoning set out by the district court and described above. The record is replete with evidence, unrelated to Johnson's protected activity, that Johnson's communication skills were impaired, that the impairment was affecting his work, and that he repeatedly failed to attend the required Fitness for Duty evaluation. No reasonable juror could overlook that evidence to conclude that ODU's reasons for requiring the evaluation and for terminating Johnson's employment were pretextual. For these reasons, the district court's grant of summary judgment to ODU is

*AFFIRMED.*

12